GEORGE MAGNAN *v.* ANACONDA INDUSTRIES, INC.

| SUPERIOR COURT | JUDICIAL DISTRICT OF WATERBURY | FILE NO. 051006 |
| --- | --- | --- |

Memorandum filed June 10, 1980

*Gormley & Dwyer,* for the plaintiff.

*Carmody & Torrance,* for the defendant.

BERDON, J. This is an action brought by the plaintiff against his former employer, the defendant Anaconda Industries, Inc., for damages arising out of an employment relationship. The defendant seeks a summary judgment in its favor on the three count complaint in which the plaintiff alleges breach of an implied covenant of good faith, tortious discharge from employment and defamation.

The plaintiff was employed for thirteen years under an oral contract which could be terminated at will. During a labor disruption the defendant questioned the plaintiff about his involvement in a theft of refrigerators. Thereafter the defendant employer asked the plaintiff to sign an untrue statement concerning the theft, and when he refused to sign the statement he was first suspended and then discharged.

## I

## TORTIOUS DISCHARGE FROM EMPLOYMENT

Generally, where employment is indefinite as to duration, either party can legally terminate it "at any time with or without cause." *Somers* v. *Cooley Chevrolet Co.,* 146 Conn. 627, 629, 153 A.2d 426 (1959); *Boucher* v. *Godfrey,* 119 Conn. 622, 627, 178 A. 655 (1935). After this motion for summary judgment was filed, however, the Supreme Court in *Sheets* v. *Teddy's Frosted Foods, Inc.,* 179 Conn. 471, 427 A.2d 385 (1980), held that an employer could be liable to an employee whose at-will employment was terminated as a result of certain intentional tortious conduct. The court held (p. 475) that an employer can be "responsible in damages [for a malicious discharge] if the former employee can prove a demonstrably *improper* reason for dismissal, a reason whose impropriety is derived from some *important violation of public policy.*" (Emphasis added.) The *Sheets* court refused to say "whether violation of a state statute is

invariably a prerequisite to the conclusion that a challenged discharge violates public policy." *Sheets* v. *Teddy's Frosted Foods, Inc.,* supra, 480. Nevertheless, at oral argument the defendant in the present case conceded that issues of fact were raised on the tortious discharge count and withdrew its motion for summary judgment as to that count.

## II

### IMPLIED COVENANT OF GOOD FAITH

The plaintiff, in the first count, seeks damages for breach of the employment contract on the basis of an implied covenant of good faith. There could be a substantial difference in the degree of proof required under the tort and contract theories. Proof of the element of malice required under the tort theory could be difficult. Shermaria-Weber, "A Remedy for Malicious Discharge of the At-Will Employee," 7 Conn. L. Rev. 758 (1975).

In *Sheets* v. *Teddy's Frosted Foods, Inc.,* supra, the Supreme Court also had before it an allegation of a breach of an implied covenant of good faith of an employment contract terminable at will, but it opted not to decide the case on that theory. Some of the language of the majority opinion in *Sheets* is, however, revealing on the issue now before this court. The majority opinion stated the following: "It would be difficult to maintain that the right to discharge an employee hired at will is so fundamentally different from other contract rights that its exercise is never subject to judicial scrutiny regardless of how outrageous, how violative of public policy, the employer's conduct may be. . . . We are mindful that the courts should not lightly intervene to impair the exercise of managerial discretion or to foment unwarranted litigation. We are, however, equally mindful that the myriad of employees without the bargaining power to command employment contracts for a

definite term are entitled to a modicum of judicial protection when their conduct as good citizens is punished by their employers." *Sheets* v. *Teddy's Frosted Foods, Inc.,* supra, 476.

Contract law has now been elevated from the laissez-faire of the marketplace to that level which requires that the parties not violate community standards of decency, fairness and reasonableness. The principle has been codified into the Restatement of Contracts as follows: "Every contract imposes upon each party a duty of good faith and fair dealing in the performance and its enforcement." Restatement (Second), Contracts § 231 (Tent. Drafts Nos. 1–7).

Other states have formulated a rule that an at-will employment contract contains an implied covenant of good faith and fair dealing, and that its termination by an employer "motivated by bad faith or malice or based on retaliation is not [in] the best interest of the economic system or the public good and constitutes a breach of the employment contract." *Monge* v. *Beebe Rubber Co.,* 114 N.H. 130, 133, 316 A.2d 549 (1974). In *Fortune* v. *National Cash Register Co.,* 373 Mass. 96, 364 N.E.2d 1251 (1977), it was held that the implied covenant was breached when the employer deprived his employee "of all compensation by terminating the contractual relationship when . . . [the employee] is on the brink of successfully completing the sale . . . ." Id., 104–105.

The application of this doctrine must, however, be balanced with the right of an employer to serve his own legitimate business interests. Accordingly, not every discharge made without cause constitutes a breach of the implied covenant. It was made clear that to constitute a breach of the implied covenant of good faith, the conduct of the employer must constitute "an aspect of fraud, deceit, or misrepresentation." *A. John Cohen Ins. Agency, Inc.* v. *Middlesex Ins. Co.,* 8

Mass. App. Ct. 178, 183, 392 N.E.2d 862, 864 (1979). Whether the plaintiff's case can reach that level to satisfy this new emerging doctrine remains to be seen. He should, however, be allowed to develop and have his case tested at a plenary hearing. See *Pierce* v. *Ortho Pharmaceutical Corporation,* 166 N.J. Super. 335, 342, 399 A.2d 1023 (1979). Accordingly, the defendant's motion for summary judgment is denied as to the first count.

## III

### ABSOLUTE PRIVILEGE IN ADMINISTRATIVE PROCEEDINGS

In the third count, the plaintiff seeks damages for defamation. Upon being discharged from the defendant's employ, the plaintiff sought unemployment compensation. In accordance with the regulations of the employment security division of the state labor department, unemployment notices (commonly referred to as "blue slips") were completed by the defendant and submitted through the plaintiff to the administrator of the division. Regs., Conn. State Agencies § 31-222-9 (1).[1] These blue slips were the basis for the defamation alleged in the third count. The first notice issued upon the plaintiff's suspension stated the reason to be: "Suspension - Willful Misconduct"; the second notice, issued upon termination provided: "Discharged for Dereliction."

"The publication of defamatory words may be under an absolute, or under a qualified or conditional, privilege. Under the former there is no liability,

---

[1] "All employers whether or not subject to the act shall submit the following reports at the times and under the conditions specified: (1) AN UNEMPLOYMENT NOTICE. This notice shall be prepared on forms made up by the administrator and shall contain the information required by such forms and shall be given to the worker immediately upon termination of employment or layoff, whatever the cause of such termination or layoff. This notice shall not be used or required for any purpose other than the filing of a claim for unemployment compensation benefits by the worker." Regs., Conn. State Agencies § 31-222-9 (1).

although the defamatory words are falsely and maliciously published." *Hassett* v. *Carroll,* 85 Conn. 23, 35, 81 A. 1013 (1911). From earliest times, this state has recognized that the absolute privilege is to be extended for the protection of those participating in judicial proceedings and "extends to judges, counsel and witnesses." *Blakeslee & Sons* v. *Carroll,* 64 Conn. 223, 232, 29 A. 473 (1894). The privilege is " '. . . founded on public policy, which requires that a judge in dealing with the matter before him, a party in preparing or resisting a legal proceeding, and a witness in giving evidence in a court of justice, shall do so with his mind uninfluenced by the fear of an action for defamation or a prosecution for libel.' *Kennedy* v. *Hilliard,* 10 Ir. C.L. Rep., 195 . . . ." Id. It is clear that this represents the law in a majority of the jurisdictions. Restatement (Second), Torts, § 587.

"The 'judicial proceeding' to which the immunity attaches has not been defined very exactly. It includes any hearing before a tribunal which performs a judicial function, ex parte or otherwise, and whether the hearing is public or not. It includes, for example, lunacy, bankruptcy, or naturalization proceedings, and an election contest. It extends also to the proceedings of many administrative officers, such as boards and commissions, so far as they have powers of discretion in applying the law to the facts which are regarded as judicial, or 'quasi-judicial,' in character." Prosser, Torts (4th Ed.) § 114, pp. 779–80.

Those administrative agencies which are "called upon to weigh evidence and to reach conclusions" have been defined as acting in a quasi-judicial capacity. *Adam* v. *Connecticut Medical Examining Board,* 137 Conn. 535, 537, 79 A.2d 350 (1951). Surely, that definition encompasses those administrative agencies that exercise "discretion in the application of legal principles to varying factual situations and requires notice and hearing." *Mock* v. *Chicago, Rock Island &*

*Pacific R.R. Co.,* 454 F.2d 131, 134 (8th Cir. 1972). The quasi-judicial proceeding is one "which may constitutionally be exercised either by the courts or by an administrative tribunal . . . [and may] be committed to an administrative tribunal in the first instance, and then, at a second stage of the proceedings, to the courts for the purpose of review." *Norwalk* v. *Connecticut Co.,* 88 Conn. 471, 478, 91 A. 442 (1914).

The employment security division, when acting upon claims for unemployment compensation, acts in a quasi-judicial capacity. In its proceedings, the administrator; General Statutes § 31-241; the referee; General Statutes § 31-242; and the employment security board of review; General Statutes § 31-249; determine the facts and apply the law to them. Appeals from the decisions of the employment security board of review must be taken to the Superior Court which is bound by the board's findings of fact and reasonable conclusions. General Statutes § 31-249b; *Bartlett* v. *Administrator,* 142 Conn. 497, 505, 115 A.2d 671 (1955). The same public policy considerations which dictate the necessity for an absolute privilege for judicial proceedings require such protection for unemployment compensation determinations. Public policy demands that employers, employees and other witnesses be free to speak without fear of the consequences, so long as the statements have some relation to the proceedings.

In overruling a forty-year-old decision which provided for only a qualified privilege for administrative proceedings, the Appellate Division of the New York Supreme Court held: "Since that time, however, the complexities of our modern society have substantially broadened the role of administrative law both in its rule-making and adjudicative aspects. With that expansion has come a concomitant recognition by many courts that certain attributes of the judicial process have equal relevance to those administrative bodies

that utilize a quasi-judicial process in the determination of individual rights, privileges or obligations." (In that case the court held that an absolute privilege applied to witnesses before a licensing board in a proceeding to revoke a real estate license). *Julien J. Studley, Inc.* v. *Lefrak,* 50 App. Div. 2d 162, 165, 376 N.Y.S.2d 200 (1975), aff'd on other grounds, 41 N.Y.2d 881, 362 N.E.2d 611 (1977).[2]

Clearly, then, the administrator, the referee and the review board, including witnesses in proceedings before them, are absolutely privileged to publish defamatory matters provided such statements have some relation to the quasi-judicial proceeding. Other jurisdictions have reached this same conclusion.[3] *White* v. *United Mills Co.,* 240 Mo. App. 443, 451, 208 S.W.2d 803 (1948); *Kitchner* v. *State,* 82 Misc. 2d 858, 860, 371 N.Y.S.2d 91 (1975); annot., "Defamation-Administrative Proceeding," 45 A.L.R.2d 1296, 1303.[4]

The absolute privilege is extended to preliminary statements made in connection with a quasi-judicial function of an administrative board. "As to communications preliminary to a proposed judicial proceeding, the rule stated in this Section applies only when the communication has some relation to a proceeding that is actually contemplated in good faith and under serious consideration by the witness or a possible party to the proceeding." Restatement

---

[2] The dicta in the 1894 case of *Blakeslee & Sons* v. *Carroll,* 64 Conn. 223, 232, 29 A. 473 (1894), limiting the privilege to "judicial proceedings in the established courts of justice" also have no relevance today.

[3] In some states, an absolute privilege is granted by statute for publications made in connection with unemployment compensation proceedings. *Greene* v. *Hoiriis,* 103 So. 2d 226, 228 (Fla. App. 1958); *Sias* v. *General Motors Corporation,* 372 Mich. 542, 127 N.W.2d 357 (1964).

[4] See *Ramstead* v. *Morgan,* 219 Or. 383, 388–89, 347 P.2d 594 (1959) for a collection of cases recognizing as absolutely privileged statements made before various administrative boards and commissions acting in a quasi-judicial manner.

(Second), Torts § 588 comment e. In this case the blue slip was required by law.[5] Clearly, the employer who submits this form is clothed with an absolute privilege. Accordingly, there is no basis for a claim of defamation under the third count and summary judgment in favor of the defendant must be granted.

In sum, the motion for summary judgment is denied as to the first count, withdrawn as to the second count and granted as to the third count.