**Richard L. MERRILL, Plaintiff
Below, Appellant,**

v.

**CROTHALL–AMERICAN, INC., a Delaware corporation, and United Health Services, Inc., a Delaware corporation, Defendants Below, Appellees.**

Supreme Court of Delaware.

Submitted: March 3, 1992.
Decided: April 21, 1992.

---

Gary W. Aber (argued), and Donald L. Gouge, Jr., Heiman, Aber & Goldlust, Wilmington, for appellant.

Richard G. Elliott, Jr. (argued), and Theodosia Price, Richards, Layton & Finger, Wilmington, for appellees.

Before HORSEY, WALSH and HOLLAND, JJ.

WALSH, Justice:

This is an appeal from the entry of summary judgment against plaintiff-below Richard L. Merrill ("Merrill"). Merrill brought this action against Crothall–American, Inc. ("Crothall"), his former employer, for wrongfully terminating his employment, claiming breach of contract, fraud and breach of an implied covenant of good faith and fair dealing. The Superior Court entered summary judgment against him on all counts, ruling that no material factual dispute existed on the record before it. We affirm that ruling as to the breach of contract and fraud counts. However, we hold that the record before the trial court posed a material issue of fact underlying Merrill's claim of breach of an implied covenant of good faith and fair dealing. We therefore reverse the Superior Court's summary dis-

position of Count III of Merrill's complaint and remand the case to that court for further proceedings.

## I

The discovery record in the trial court, viewed from a perspective which favors Merrill as the non-movant, reflects the following events.

In the summer of 1986, Merrill was working as a store manager for a marina in southern Delaware. Apparently dissatisfied with that position, he answered a help wanted advertisement appearing in the Wilmington News Journal in August of that year. The advertisement was placed by Crothall and sought an individual, on a temporary basis, to aid in the development of a computerized preventive maintenance system. Merrill sent a background resume to the specified address.

In response to the resume, Crothall contacted Merrill and set up an interview for October 8. On that day Merrill arrived for the interview, completed an application for the temporary position and was interviewed by Charlie Collins, a Crothall employee. Their conversation lasted only fifteen to twenty minutes, however, after which Merrill was "taken across the hall" to speak with another Crothall employee, Bill Woomer ("Woomer"), about another position Crothall was attempting to fill. Unlike the advertised job this position was not temporary, but full-time. After meeting with Woomer, and later with Woomer's supervisor, Merrill was offered the full-time position in a telephone conversation on October 14, 1986. The proposed employment was that of Director of Plant Operations at King's Harbor Care Center ("KHCC"), a Crothall client located in New York City.

Crothall is a contract service organization which provides facilities management for institutions such as schools and hospitals. One of the duties Crothall contracts to perform is the hiring of management personnel. These personnel, though working at the client's facility, are in fact employees of Crothall. In the present case, the Superior Court found that Crothall had a contractual duty to provide KHCC, a health care facility, with a Director of Plant Operations by October 14, 1986, just six days after Merrill was first interviewed and the very day he was offered the position.

At the time of his interview with Woomer, Merrill expressed concern as to whether he was qualified for the KHCC position. Although he possesses a degree in chemical engineering and an MBA, Merrill had no experience in the health care field nor in plant maintenance. After being assured of adequate support and training,[1] however, Merrill accepted the position without visiting the site. The agreement was formalized two weeks later by a letter from Woomer to Merrill dated October 29, 1986 and an employment contract between Crothall and Merrill dated October 27, 1986.

The relationship between Merrill and Crothall proved to be short-lived. Crothall claims that less than a month after Merrill accepted the position it began to receive complaints from KHCC about Merrill's performance. At one point, Woomer wrote to Merrill citing some of his shortcomings, including lack of interpersonal and managerial skills and failure to develop a specific program. Woomer informed Merrill that his position was "tenuous." On February 9, 1987, Crothall terminated Merrill's employment, citing numerous problems with his performance.

## II

Merrill claimed in the trial court that the reasons asserted by Crothall for his termination are not the actual basis for his release. He contended that, from the very beginning of their relationship, Crothall intended that Merrill remain in the position only until Crothall could find a more qualified candidate. He argued that he was merely a "warm body" who satisfied Crothall's contractual duty to fill the Director's position at KHCC by October 14, 1986. He supported this assertion with documenta-

---

1. The exact nature of these assurances are disputed by Crothall.

tion purporting to show that Crothall interviewed the person who eventually replaced him, John Blake, only two days after Merrill was offered the job. Furthermore, Merrill has produced an affidavit by K.C. Hoke, an award winning engineer employed by Crothall, which states, in part, that:

> Mr. Woomer told me on several occasions that Dick Merrill was hired to fulfill the contract that was signed between Crothall–American and King's Harbor Care Center, until someone else could be hired. Woomer also told me that Crothall–American needed someone immediately because the contract had already been signed.

On the strength of this evidence Merrill posits three distinct theories of recovery. He claims that his discharge breached his employment contract because the offer he accepted on October 14, 1986 was for a "permanent" position. His fraud count is based on Crothall's false representation that his position would be "permanent" and that he would be adequately trained. Finally he asserts that by inducing Merrill to accept the position without informing him of its intent to replace him as soon as a "qualified" candidate could be obtained, Crothall acted in bad faith.

The Superior Court rejected all these claims. It reasoned that the only evidence Merrill had produced to support the permanent position representation were statements by Woomer made in February of 1987, well after the employment relationship had begun. It further noted that in his deposition Merrill admitted he knew from the very beginning that his employment could be terminated by Crothall at any time for any reason. Given this evidence, the court reasoned, Merrill had failed to make a showing that he could rebut the presumption under settled Delaware law that an employment contract is at-will. The trial court also ruled that this same knowledge of the indefinite nature of his employment precluded any assertion that Crothall fraudulently misled him to believe his employment was permanent.

In its grant of summary judgment, the Superior Court failed to address specifically the implied covenant claim. However, in its order denying certification of an interlocutory appeal to this Court, the Superior Court seemed to imply that there could be no breach of an implied covenant of good faith and fair dealing here because there could be no showing of fraud. After the remaining issues in the case were resolved, Merrill appealed to this Court.

### III

This case comes from a trial court's grant of summary judgment following review of what is, essentially, a paper record. Applying the case dispositive provisions of Superior Court Civil Rule 56(c), the court ruled as a matter of law that Merrill was unable to prevail. This Court examines *de novo* questions of law decided by a lower court and we thus exercise plenary review. *Fiduciary Trust Co. v. Fiduciary Trust Co.*, Del.Supr., 445 A.2d 927 (1982).

■ The purpose of summary judgment is to avoid the delay and expense of a trial where the ultimate fact finder, whether judge or jury, has nothing to decide. 6 Moore's Federal Practice ¶ 56.04[1] (1992). Thus, entry of summary judgment is proper only where there are no material factual disputes. *Moore v. Sizemore*, Del.Supr., 405 A.2d 679, 680 (1979). If, however, there are material factual disputes, that is, if the parties are in disagreement concerning the factual predicate for the legal principles they advance, summary judgment is not warranted.

■ The role of a trial court when faced with a motion for summary judgment is to identify disputed factual issues whose resolution is necessary to decide the case, but not to decide such issues. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). In discharging this function, the court must view the evidence in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). This means it will accept as established all undisputed factual assertions, made by either party, and accept the

non-movant's version of any disputed facts. *Adickes*, 398 U.S. at 158–59, 90 S.Ct. at 1609. From those accepted facts the court will draw all rational inferences which favor the non-moving party. *Id.*

■ In *Fiduciary Trust Co. v. Fiduciary Trust Co.*, Del.Supr., 445 A.2d 927 (1982), this Court, in referring to the standard of review which governs appeals from the grant of summary judgment, indicated that it would defer to the factual findings of the trial court unless "clearly wrong." In that case, however, the trial court's decision had been rendered on cross-motions for summary judgment. In such a procedural posture the parties implicitly concede the absence of material factual disputes and acknowledge the sufficiency of the record to support their respective motions. Where, as here, appellate review is directed to the granting of summary judgment in the face the non-movant's claim that factual disputes exist, no such deference is warranted. This Court is thus free to determine, *de novo* whether the record reflects the existence of material factual disputes.

■ From an appellate perspective, a decision granting summary judgment over the objection of the non-movant, does not, strictly speaking, present for review "factual findings" but rather presents the legal conclusion that there is no factual bar to the determination of the legal merit of the movant's position. Since that determination is made on a paper record we are free to draw our own inferences as to the legal significance of such evidence. Given the same record, the Court is as institutionally competent to discern the existence of factual disputes as is the trial court. 6 Moore's Federal Practice ¶ 56.27[1] (1992). The scope of our review is therefore unqualified.

### IV

We now turn to Merrill's specific arguments on appeal.[2] Merrill first contends that the Superior Court erred in granting summary judgment on his fraud claim because he had clearly alleged and supported his contention that Crothall had represented to him that his position would be "permanent" when it in fact was not. He complains that the Superior Court mistakenly extended the broad discretion accorded employers under at-will employment contracts as constituting a defense to a claim of fraud. He further argues that the practical effect of the lower court's ruling is to allow an employer to misrepresent any aspect of a particular job offer as long as the employee knows that the position is "at-will."

■ A common law action for fraud is well recognized under Delaware law. *Stephenson v. Capano Development, Inc.*, Del.Supr., 462 A.2d 1069 (1983). An essential element of such a claim, however, is that the alleged victim not be aware of the true facts which are misrepresented. *Harman v. Masoneilan Intern., Inc.*, Del. Supr., 442 A.2d 487, 499 (1982). In the context of the fraud claim, Merrill's arguments regarding the proper balancing of freedom of contract and employee's rights are essentially irrelevant. Although Merrill alleges that Crothall misrepresented the position as permanent, he clearly admitted in his deposition that he knew at all relevant times that it was not. This admission, coupled with the written contract he signed which plainly describes the at-will nature of the employment, is undisputed evidence of the extent of Merrill's knowledge at the time he accepted employment. Given this evidence, we believe the Superior Court was entirely correct in concluding that Merrill would never be able to prove he possessed the requisite lack of knowledge concerning the permanency of his employment. The absence of such an element is fatal to the fraud claim. We therefore affirm the entry of summary judgment as to Merrill's claim of fraud.

### V

Merrill next argues the Superior Court erred in granting summary judgment on

---

**2.** In this Court, Merrill has not raised his breach of contract claim. Consequently, the Superior Court's resolution of that issue is final.

his claim that Crothall breached an implied covenant of good faith and fair dealing. In a separate count of the complaint, Merrill alleged that Crothall through Woomer, failed to act in good faith by inducing him to accept an offer of employment even though it was Woomer's unspoken intention that Merrill remain in the position only temporarily. As a preliminary matter, we must determine whether Merrill could recover on such a claim, given any set of facts to support it. We must thus determine whether this claim constitutes a cognizable cause of action under Delaware law.

Merrill relies on an unreported decision of the Superior Court for the proposition that an implied covenant of good faith and fair dealing exists in every employment contract in Delaware. *See Shockley v. General Foods Corp.*, Del.Super., C.A. 87C–DE–13, Chandler, J., 1988 WL 102983 (Sept. 28, 1988). That decision, however, merely assumed without deciding that this Court would adopt such a rule. *Shockley*, slip op. at 9. We have, in fact, never addressed this precise question.

The proposition that implied covenants of good faith and fair dealing underlie a contractual relationship, is not a concept strange to Delaware law. In *Blish v. Thompson Automatic Arms Corp.*, Del. Supr., 64 A.2d 581 (1948), for example, when construing an underwriting agreement this Court noted that the "question involved [was] one of good faith, proper motive and fair dealing, which by express terms or by implication is written into every contract." *Id.* at 597. At common law the duty of fair dealing and good faith was deemed impliedly to be a part of contracts of every kind. *See* Restatement (Second) of Contracts § 204 (1979); 17 Am.Jur.2d Contracts § 380 (1990); Corbin on Contracts § 654A (Supp.1991). Other jurisdictions have expressly extended the concept to at-will employment contracts. *See, e.g., Magnan v. Anaconda Industries, Inc.*, Conn.Super., 429 A.2d 492 (1980); *Fortune v. National Cash Register Co.*, 373 Mass. 96, 364 N.E.2d 1251 (1977); *Monge v. Beebe Rubber Co.*, 114 N.H. 130, 316 A.2d 549 (1974).

We recognize that there is tension between the self-interest which an employer is legally entitled to pursue in all contractual undertakings and the requirement not to overreach in the hiring process. In the absence of statutory or collective bargaining restrictions, the parties to an employment agreement are free to pursue their separate economic goals. An employer may be motivated by its own legitimate business interests when making employment decisions and it may advance those interests, for the most part, however it chooses. *Fortune*, 364 N.E.2d at 1256. We believe, however, that holding an employer to a requirement of good faith when making employment contracts represents a minimal, and wholly justifiable, interference in the management of its business. Such a requirement merely prevents one side from obtaining an unfair advantage when bargaining for a contract. An employer has wide latitude in deciding how it conducts its business including its employment undertakings, but it may not do so by trickery or deceit. We therefore hold that every employment contract made under the laws of this State, consonant with general principles of contract law, includes an implied covenant of good faith and fair dealing.

What is required for a showing that an implied covenant of fair dealing has been breached is another matter. It has been said that "to constitute a breach of the implied covenant of good faith, the conduct of the employer must constitute 'an aspect of fraud, deceit or misrepresentation.'" *Magnan*, 429 A.2d at 494 (quoting *A. John Cohen Ins. v. Middlesex Ins. Co.*, 8 Mass.App. 178, 392 N.E.2d 862 (1979)). We think this characterization of an employer's duty under the covenant is accurate. The lodestar here is candor. An employer acts in bad faith when it induces another to enter into an employment contract through actions, words, or the withholding of information, which is intentionally deceptive in some way material to the contract. Such conduct constitutes "an aspect of fraud, deceit or misrepresentation."

■ In the present case, Merrill alleged that Crothall induced him to enter into the employment contract by concealing from him its intention to employ him only temporarily while allowing him to proceed under the belief that the duration of the employment was, at the least, indefinite. So stated, a valid claim for breach of an implied covenant of fair dealing is properly pleaded. An employer may not in good faith knowingly allow an employee to assume that the duration of an employment contract is indefinite, when it is, in secret contemplation of the employer, of limited duration. The duration of an employment contract is clearly material to one's decision to accept a new position, especially where, as here, the assumption of the new position requires surrender of present employment, however minimal by comparison, and relocation to another state. Our law provides a heavy presumption that a contract for employment, unless otherwise expressly stated, is at-will in nature, with duration indefinite. *See Heideck v. Kent General Hospital, Inc.*, Del.Supr., 446 A.2d 1095, 1096 (1982). Just as this presumption protects employers from being liable on the employment contract for a period beyond which future events dictate termination, the covenant of good faith, in this context, protects employees from receiving under the contract less than what was bargained for.

■ To survive a motion for summary judgment, Merrill was required to support his claim with facts sufficient to show that a material issue existed as to one or more of the elements for recovery for breach of the implied covenant. *Moore v. Sizemore*, 405 A.2d at 681. We believe he has done so. From the affidavit of K.C. Hoke and the evidence that Crothall was, from the inception of its approach to Merrill, actively pursuing Merrill's eventual replacement, John Blake, a rational jury could infer that Crothall never intended that Merrill stay in the position longer than was necessary to secure a suitable replacement. This evidence lends support to Merrill's claim that he was nothing more than a "warm body" hired to satisfy Crothall's contractual obligation to KHCC to have a facilities engi-

neer on site by a fixed date. The further evidence that the position was represented by Crothall as "at-will," *i.e.* of indefinite duration with no preconceived fixed termination date, would supply the "aspect of fraud, deceit or misrepresentation" to support a jury finding in Merrill's favor. Where the non-moving party brings forth facts which, if believed by the jury, would support a finding of a breach of the implied covenant of good faith, summary judgment is inappropriate. *Itek Corp. v. Chicago Aerial Indus., Inc.*, Del.Supr., 248 A.2d 625 (1968).

## VI

Although our holding in this case permits Merrill's claim for breach of contract to proceed, certain caveats are in order. Merrill's claim for damages must be considered in light of the fact that the position he believed he was accepting, although described as permanent, was of indefinite duration to continue at the will of his employer. If it appears from the evidence that his employment would have been terminated for reasons arising after the inception of employment and unrelated to the alleged bad faith of Crothall, his recovery might well be limited to damages attributable to inducement, *i.e.*, that previous employment surrendered and the expense of relocation.

■ Finally, we do not rest our holding on, nor did we consider, what constitutes justification for termination of an at-will employment contract. Although the implied covenant of good faith and fair dealing may be breached by termination in some circumstances, *see, e.g., Magnan*, 429 A.2d at 494; *Fortune*, 364 N.E.2d at 1255–6; *Monge*, 316 A.2d at 551, or some other public policy implicated by such a termination, we have not here addressed such concerns. This case involves a claim that the employer deceptively induced the employee to enter into an employment contract. The termination of employment merely gave effect to the deception. The asserted bad faith is therefore more analogous to a charge of fraud in the inducement than one of wrongful discharge.

Nothing said here is to be construed as limiting an employer's freedom to terminate an at-will employment contract for its own legitimate business, or even highly subjective, reasons. Such a contract is still terminable by either party for any reason not motivated by bad faith.

The judgment of the Superior Court is Affirmed in part and Reversed in part and Remanded for further proceedings consistent with this decision.