[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT
In this case, plaintiff Roy McKnerney, a Glastonbury schoolteacher, has sued defendants Hallie, William and Sandra Ransone, one of his former pupils at the Buttonball Lane School in Glastonbury and her parents, for negligent infliction of emotional distress, invasion of privacy and intentional infliction of emotional distress based on the defendant's publication, through their attorney, of a letter purportedly describing the plaintiff's conduct towards defendant Hallie Ransone in an October 8, 1992 incident at the School. In the letter, which was sent by certified mail to the town clerk of Glastonbury on March 24, 1993 to notify the Town under General Statutes §§ 7-101a
and 7-465 of the defendants' intention to sue the Town to recover damages for certain injuries allegedly suffered by Hallie Ransone in the October 8 incident, the defendants' attorney described the incident and its aftermath as follows:
DESCRIPTION, TIME AND PLACE OF INCIDENT
 On October 8, 1992, at approximately 1:00 p.m., Hallie M. Ransone, a third grader at Buttonball Lane School, located at 376 Buttonball Lane, Glastonbury, Connecticut 06033, was seriously injured on the playground of said school when she fell from the center chinning bar of the playground equipment located at the easterly end of the school playground. Copies of the school's incident report and photos of the playground chinning bar equipment are attached hereto for CT Page 5432 reference.
 At the time of her fall, Hallie Ransone was not being supervised or spotted while she was on said playground equipment. She fell from the center chinning bar onto hardpacked dirt beneath this bar. As a result of this fall, she fractured both of her wrists and suffered contusions and abrasions to her face, head and upper torso.
 Roy McKnerney, of 91 Murielle Dr., South Windsor, CT 06074, a teacher employed in the Glastonbury School System, who was on the playground at the time of the fall, failed to take appropriate steps to prevent the fall and, thereafter, failed to properly render care and assistance to the injured minor. For more than one hour after the fall, in his classroom number 21 at said school, he berated her for crying and neglected to arrange for proper medical attention. Thereafter, he insisted that she perform certain school exercises although she was physically unable to do so by reason of her injuries.
 At the time of the fall, Mr. McKnerney, the Town of Glastonbury, the Glastonbury Board of Education and their agents, employees and representatives knew or should have known that the said playground equipment upon which Hallie was allowed to play was in a dangerous condition and that said minor should not have been allowed to use this equipment without supervision or safety spotting. Nevertheless, neither Mr. McKnerney, the Town nor the Board took steps to correct the dangerous conditions.
 In addition to the physical injuries suffered by the minor, she was subjected to ridicule and an emotional affront by Mr. McKnerney for complaining about her physical injuries and was denied proper medical attention. As a further result, the minor child has suffered mental anguish, anxiety, emotional distress, embarrassment and trauma.
CT Page 5433
 As a result of the foregoing events, the child's parents, William and Sandra Ransone, have, themselves, suffered emotional anguish and have incurred substantial expenses for the medical care necessitated by their daughter's injuries.
Letter of Bruce G. MacDermid, Esq., pp. 1-2.
After the foregoing letter was sent and received, portions of it were republished in two local newspaper articles describing the defendants' claims. An April 1, 1993 article in the Glastonbury Citizen quoted directly from the letter as follows:
 The student "was subjected to ridicule and an emotional affront [by plaintiff McKnerney] for complaining about . . . physical injuries" and "suffered mental anguish, anxiety, emotional distress and trauma," the claim alleges.
Similarly, on April 15, 1993, the Hartford Courant
published the following description of the letter in an article describing the defendants' charges against the plaintiff and the Town:
 The letter alleges that Roy McKnerney, the teacher on playground duty, is responsible for Ransone's fall because he failed to render care and assistance to the injured minor.
 The letter also accuses McKnerney of berating Ransone "for crying and neglected to arrange for proper medical attention. Thereafter, he insisted that she perform certain school exercises although she was physically unable to do so by reason of her injuries," the letter said.
In his three-count Amended Complaint dated January 10, 1994, the plaintiff alleges that the defendants' published statements concerning his treatment of Hallie Ransone on CT Page 5434 October 8, 1992 were false and malicious. The plaintiff further alleges that the publication of such false and malicious statements invaded his privacy, since they were highly offensive to a reasonable person. Finally, he claims that the defendants' publication of the subject statements was extreme and outrageous conduct, done with malice, and performed with the intent to cause him emotional distress. As a result of such conduct, the plaintiff claims that he has suffered severe emotional distress.
On September 1, 1994, the defendants answered the plaintiff's Amended Complaint by admitting that they caused to be published to the Town of Glastonbury the notice which is referred to in the Amended Complaint, but denying that the statements made therein were false or malicious, extreme or outrageous, invasive of the plaintiff's privacy, uttered with malice, or published with the intent to inflict emotional distress upon him. In addition, the defendants asserted two special defenses: first, that the subject publication is accorded an absolute privilege under the law; and second, that the subject publication is accorded a conditional privilege under the law.
The defendants have now moved this Court to enter summary judgment in their favor on each and every count of the Amended Complaint. As grounds for their Motion, the defendants assert that the uncontested evidence of record eliminates any genuine issue of material fact as to the validity of their special defense of absolute privilege. On that basis, as more fully detailed in their supporting Memorandum of Law and the accompanying affidavit of Attorney MacDermid, the defendants claim that they are entitled to judgment as a matter of law. The plaintiff, who has submitted his own affidavit and Memorandum of Law, opposes the defendants' Motion on the ground that their claim of absolute privilege is wholly unfounded.
 I
"Pursuant to Practice Book 384, summary judgment `shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Suarez v.CT Page 5435Dickmont Plastics Corp., 229 Conn. 99, 105, 639 A.2d 507
(1994). The moving party has the burden of presenting evidence that shows that no material fact exists; however, the opposing party is also required to substantiate its adverse claim by disclosing the existence of such an issue.Haesche v. Kissner, 229 Conn. 213, 217, 640 A.2d 89 (1994). An opponent must do more than assert the existence of a disputed issue. Scrapchansky v. Plainfield, 226 Conn. 446,450, 627 A.2d 1329 (1993). The test is whether a party would be entitled to a directed verdict on the same facts.Suarez v. Dickmont Plastics Corp., 229 Conn. 99, 105,639 A.2d 507 (1994). "A directed verdict is justified if on the evidence the jury could not reasonably and legally have reached any other decision." Gore v. People's SavingsBank, 35 Conn. App. 126, 129, (1994).
 II
At common law in Connecticut, all communications made or testimony elicited in connection with and pertinent to any ongoing judicial or quasi-judicial proceeding are absolutely privileged. Peytan v. Ellis, 200 Conn. 243, 252
(1986).
 The effect of an absolute privilege is that damages cannot be recovered for a defamatory statement even if it is published falsely and maliciously. Hassett v. Carroll, 85 Conn. 23, 35, 81 A. 1013 (1911); Magnan v. Anaconda Industries, Inc., 37 Conn. Sup. 38, 43, 429 A.2d 492 (1980), rev'd on other grounds, 193 Conn. 558, 479 A.2d 781 (1984). "The policy underlying the privilege is that in certain situations the public interest in having people speak freely outweighs the risk that individuals will occasionally abuse the privilege by making false statements." Circus Circus Hotels, Inc. v. Witherspoon,
[99 New. 56, 60, 657 P.2d 101 (1983)], supra, 61; Butz v. Economou, 438 U.S. 478, 512-13, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978).
CT Page 5436
Consistent with this purpose, the absolute privilege to utter or publish statements in the course of judicial proceedings has been held to apply both in formal judicial proceedings before courts and in quasi-judicial proceedings before boards, agencies or other tribunals which have and exercise any or all of the following powers:
 to: (1) exercise judgment and discretion; (2) hear and determine or to ascertain facts and decide; (3) make binding orders and judgments; (4) affect the personal or property rights of private persons; (5) examine witnesses and hear the litigation of the issues on a hearing; and (6) enforce decisions or impose penalties.
Kelly v. Bonney, 221 Conn. 549, 567 (1992). The privilege applies, moreover, not merely to statements made in formal pleadings submitted to or formal testimony given before judicial or quasi-judicial tribunals, but to "any statements made as a requisite step in those proceedings,"id. at 571, "`so long as they are in some way pertinent to the subject of the controversy.'" Peytan v. Ellis, supra,
246 (quoting Circus Circus Hotels. Inc. v. Witherspoon,supra, 60).
Under this rule, the absolute common-law privilege for statements made in and for the purpose of judicial proceedings has frequently been held to protect utterances made in distinctly non-judicial settings, when they are made for the clear purpose of laying the necessary groundwork for the assertion of legal rights. In Kelley v.Bonney, supra, for example, the privilege was held to apply to communications between a would-be complainant in a state teacher decertification proceeding and another private citizen whom she believed to have factual information supportive of her complaint. Because, the Court ruled, the defendant's purpose for making the communication was to marshal evidence to be used in the decertification proceeding, the communication was absolutely privileged.
In reaching this result, the Court reasoned that:
"To accomplish the purpose of judicial CT Page 5437 or quasi-judicial proceedings, it is obvious that the parties or persons interested must confer and marshal their evidence for presentation at the hearing. The right of private parties to combine and make presentations to an official meeting and, as a necessary incident thereto, to prepare materials to be presented is a fundamental adjunct to the right of access to judicial and quasi-judicial proceedings. To make such preparations and presentations effective, there must be an open channel of communication between the persons interested and the forum, unchilled by the thought of subsequent judicial action against such participants; provided always, of course, that such preliminary meetings, conduct and activities are directed toward the achievement of the objects of the litigation or other proceedings.
Id., 573-74 (quoting from Brody v. Montalbano,87 Cal.App.3d 725, 734, 151 Cal.Rptr. 206 (1978), cert. denied,444 U.S. 844, 100 S.Ct. 87, 62 L.Ed.2d 57 (1979)).
By a similar logic, the Kelley Court also accorded an absolute privilege to the filing of the complainant's original verified petition and complaint to the state board of education to initiate the decertification proceeding in question. Upon examining the relevant statutory provisions and determining that the submission of such documents "was necessary under the circumstances to initiate the decertification process as contemplated by [statute]," id.,
571, the Court concluded that any statements made therein were absolutely privileged and could not provide the basis for liability [either] in a defamation action," id., or in an action for intentional infliction of emotional distress which "was founded upon the same conduct as [the] defamation claim." Id., n. 15.
Of particular note in the instant case is the Superior CT Page 5438 Court decision in Magnan v. Anaconda Industries. Inc.,supra, in which the trial court extended the absolute common-law privilege for statements made in a judicial or quasi-judicial proceeding to statements made in a formal "unemployment notice" required by regulation of any employer who discharges an employee. Though the notice in question would not necessarily be used in any judicial or quasi-judicial proceeding, its submission was required by law in order to establish the basis for the employer's actions in the event such a proceeding were initiated. The trial court thus held that the statements contained in the notice were absolutely privileged, since they had "some relation to [a] quasi-judicial proceeding." Id., 45.
Against this background, the statements here at issue must be regarded as absolutely privileged. To begin with, their only publication by the defendants was in a formal notice to the Town of Glastonbury of their intent to initiate suit based on the plaintiff's alleged conduct towards Hallie Ransone on October 8, 1992. The notice was sent to the town clerk pursuant to General Statutes §§ 7-101a
and 7-465. Section 7-101a mandates and requires, as a condition precedent to the institution of a legal action against a municipality or its employee, that "written notice of the intention to commence such action and of the time when and the place where the damages were incurred or sustained [be] . . . filed with the clerk of such municipality within six months after such cause of action has accrued." An identical requirement is set forth on General Statutes § 7-465 (a).
The purpose of these statutes, which were expressly invoked in the defendants' letter to the Glastonbury town clerk, is to:
 give the officers of the municipality such information as will enable them to make a timely investigation of the claim and to determine the existence and extent of liability. Schaap v. Meriden, 139 Conn. 254, 256 [(1952)]; Cassidy v. Southbury, 86 Conn. 45, 49
[(1912)].
Fraser v. Henninger, 173 Conn. 52, 55 (1977). CT Page 5439 The sufficiency of the notice is to be tested with reference to its purpose, which is "to furnish the party against whom a claim was to be made such warning as would prompt him to make such inquiries as he might deem necessary or prudent for the preservation of his interests, and such information as would furnish him a reasonable guide in the conduct of such inquiries, and in obtaining such information as he might deem helpful for his protection." Cassidy v. Southbury, supra, 49 (quoted inFraser v. Henninger, 173 Conn. 52, 56 (1977)).
In view of this well established purpose, the requirement of timely, sufficient notice is a mandatory precondition to the filing of a lawsuit under Sections 7-101
and 7-465. Accordingly, any statements made therein for the purposes of advising the municipality of the substance of the claims against it are absolutely privileged.
Against this background, the plaintiff's three essential arguments against extending the common-law privilege to the defendants' challenged statements are clearly without merit. His first claim — that the statements cannot be accorded the absolute privilege because the town clerk of Glastonbury is not a quasi-judicial officer who can exercise judicial powers is simply specious. The question presented is not whether the particular person or agency to whom or which the communication is directed has judicial or quasi-judicial powers, but rather, whether the communication in question was made in and for the purpose of completing any necessary step in the preparation or prosecution of any judicial or quasi-judicial proceeding. Surely, the witnesses to whom pre-complaint communications were made in Kelley v. Bonney
were not judicial or quasi-judicial officers. Instead, they were ordinary citizens with whom the defendant could communicate under the protection of an absolute privilege because her communications were in some way related to the quasi-judicial proceeding she thereby sought to initiate.
Here, then, it is of no moment at all that the Glastonbury town clerk had no judicial or quasi-judicial powers. What makes communications with the clerk absolutely privileged is their relatedness to the formal judicial proceeding — a lawsuit to collect money damages — CT Page 5440 which by law could not be initiated if such a notice were not filed.
The plaintiff's second argument against the application of the absolute common-law privilege is that in this case, the defendants' challenged statements were not made in the course of a judicial or quasi-judicial proceeding because, though notice of defendants' intent to communicate such a proceeding was duly sent, no such proceeding was ever initiated. Instead, claims the plaintiff, the defendants settled their claim against the town out of court without ever filing suit, and thereby removed their present statements from the protection of the privilege.
This argument flies in the face of the logic of the absolute common-law privilege for several reasons. First, there is nothing in the law giving rise to the privilege which conditions the availability of the privilege on the ultimate, post-utterance decision of the utterer to commence his action. In fact, the defendants in Kelley v.Bonney were held to have made absolutely privileged communications both when they filed their initial petition requesting the initiation of the teacher decertification proceeding and earlier, when in preparing to file their petition, they contacted persons believed to be witnesses to the teacher's alleged misconduct. Nothing in Kelley
suggested that the continuing viability of any claim of privilege depended upon the future initiation or prosecution of the proceeding for which they endeavored, by their challenged conduct, to prepare.
Secondly, it would be foolish indeed to condition the availability of the absolute privilege upon the occurrence of future events, for not only are certain of these events beyond the control of those who make the subject communications, but it is the policy of our state to encourage the settlement of private disputes without resorting to formal judicial procedures. If potential litigants were informed that by settling their disputes short of formal judicial or quasi-judicial proceedings they might open themselves up to later claims of defamation, intentional or negligent infliction of emotional distress and the like based on the substance of their pre-settlement communications, they would obviously be given the incentive CT Page 5441 not to settle any dispute short of trial. Such counterproductive incentives to clog the courts with unnecessary litigation would risk breaking the back of our already overburdened judicial system. Plainly, no such result has even been contemplated by any judge who has enforced the doctrine of absolute privilege.
The plaintiff's third argument in opposition to the defendants' Motion is that even if certain statements in the defendants' notice to the Town of Glastonbury might have been privileged, the letter provided details which were unnecessary to the accomplishment of the legitimate purposes of the statutory notice requirement. The requirement, to reiterate, is that any person who wishes to maintain an action against a municipality or its employee provide the town with "written notice of the intention to commence such action and of the time when and the place where the damages were incurred or sustained." General Statutes §§ 7-101a, 7-465 (a).
Read literally, the statute would appear to require no more than timely notice of the time and place where the damages were incurred or sustained. However, as construed by our Supreme Court in Fraser v. Henninger supra, and the cases cited therein, the true purpose of the statute is to ensure that any Town which may be sued will receive timely and effective notice of all potential claims against it so that it can investigate those claims, settle those which can and should be settled, and prepare meaningfully to defend against the rest. Construed in the light of Fraser,
the instant letter did no more than apprise the Town of the precise nature of the alleged conduct of plaintiff McKnerney on which the defendants' planned lawsuit was to be based. Manifestly, the result of the filing of this timely, thorough notice was the prompt settlement of the defendants' claim on terms that both the Town and the defendants found satisfactory. No further action was necessary against the employee, for the basis of the defendants' action against the Town was indemnification. See Sestito v. Groton, 178 Conn. 520 (1979).
In conclusion, the Court finds that each and every one of the defendants' challenged statements related to their legal claim against the Town of Glastonbury and its legal cl claim against the Town of Glastonbury and its CT Page 5442 employee, plaintiff McKnerney; that each such statement was made in the context of a statutorily required notice whose filing was a legal prerequisite to the initiation of formal, judicial proceedings against the Town; and thus, that the defendants enjoyed an absolute privilege from damages suits when they published those statements to the Glastonbury town clerk. For those reasons, the defendants' Motion for Summary Judgment is hereby granted.
Michael R. Sheldon, Judge