[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION MOTION FOR SUMMARY JUDGMENT
Facts
In 1998 there was a bitterly contested primary election for the Office of High Sheriff of Windham County. The incumbent High Sheriff James CT Page 2749 Kenney was ultimately defeated by the challenger Thomas W. White. The contest resulted in many charges back and forth.
On the complaint of Sheriff Kenney, the State's Attorney, Mark Solak, undertook an investigation of practices of then Deputy Sheriff White in connection with the collection of judgments based upon the claimed inappropriate practices of White. Solak had referred Kenney's complaint to the Connecticut State Police for further investigation some time in May of 1998.
White defeated Kenney and succeeded to the Office of High Sheriff at the end of May 1999. Debra Collins, a plaintiff in one of these cases was at that time Assistant State's Attorney for Windham County. In 1998 into 1999, her husband, also a plaintiff in one of these cases, Charles Collins, was the supervising special deputy sheriff under Kenney. Aaron and Adam Auclair were both deputy sheriffs under Sheriff Kenney.
Sheriff Kenney's last day in office was on or about May 28, 1999. At that time, before vacating the office, some of the sheriff's assistants were shredding documents in the High Sheriff's office. One of the Auclairs was involved as was the plaintiff Debra Collins who brought with her a shredder from the State's Attorney's Office to assist. Assistant State's Attorney Collins drove Adam Auclair to the State Police barracks while the investigation was ongoing. The plaintiff Charles Collins was socially friendly with one or both of the Auclair brothers and Attorney Collins had some social contact with at least one of the Auclairs.
The defendant's decedent, Arthur Meisler, was lawyer for Thomas W. White in connection with the pending criminal investigation. In connection with that representation, on May 12, 1999 Mr. Meisler wrote a letter to Mr. Solak, the Windham County State's Attorney, requesting that he disqualify himself and his office in the investigation based upon:
 "the obvious conflict of interest caused by your assignment of this file to Deputy Assistant State's Attorney Debra Collins and the failure of your office to maintain any confidentiality concerning this obviously politically sensitive investigation. "
The letter goes on to state:
"You have apparently shared information concerning this investigation with Mrs. Solak as she was gossiping with an employee of the Department of Adult Probation concerning your office's investigation of Sheriff White. CT Page 2750
 Attorney Collins has apparently discussed the investigation with her husband, as he discussed the case while seeking employment outside the Windham County Sheriff's Department.
 As a further reason for the recusal of your office from this case I would point out Mrs. Collin's knowledge and participation in the destruction of files and records maintained by the former Windham County High Sheriff James Kenney; the individual whose complaint to your office during a heated political campaign resulted in the initiation of the investigation of Mr. White.
 It is my understanding that during the month prior to the expiration of Sheriff Kenney's term of office voluminous files of the Windham County Sheriff's Office were destroyed by Mr. Kenney with the assistance of Mr. Charles Collins and his wife Debra Collins of your office. It is my understanding that a paper shredder, property of the Division of Criminal Justice was moved from your office to the Sheriff's office and used to shred some of these files. At the same time the memory of one of the state owned computers in the Sheriff's office was wiped clean and a second state owned computer was removed from the courthouse and not made available to Sheriff White when he assumed office June 1, 1999.
 For the reasons outlined, I request your office immediately refer any and all pending matters concerning Mr. Thomas W. White to the office of the Chief State's Attorney and that you and your staff have no further involvement in any investigation related to Mr. White."
On the same date, a similar letter was written to John M. Bailey, Esquire, Chief State's Attorney, enclosing a copy of the letter to Mr. Solak and asking that the investigation be referred to the Chief State's Attorney's Office, even if Mr. Solak declines himself to refer the matter to the Chief State's Attorney's Office. That letter states:
". . . By way of background you should be aware that in May of 1998 the Windham Judicial District State's Attorney's Office referred a complaint from the CT Page 2751 Windham County High Sheriff James Kenney to the Eastern District Criminal Investigation Section of the Connecticut State Police concerning Deputy Sheriff Thomas W. White. At that time Mr. White was challenging Mr. Kenney for the Democratic nomination for Sheriff of Windham County . . . It is Mr. White's understanding that Deputy Assistant State's Attorney Debra Collins is assigned to this investigation. You must understand that Mr. Charles Collins, was a special Deputy Sheriff and very much involved in the losing primary campaign of High Sheriff James Kenney. Mr. Collins resigned his position with the Windham County Sheriff's Department, and later sought employment with another country Sheriff stating that `he did not want to work for a sheriff his wife was investigating.'
 During the month preceding Mr. White's assuming the office of High Sheriff Mr. Kenny with the assistance of Mr. Charles Collins and Deputy Assistant State's Attorney Debra Collins destroyed, shredded and otherwise disposed of records of the Windham County Sheriff's Office. A shredding machine, property of the Division of Criminal Justice was employed to destroy some of these records. Mr. White was also informed that copies of personnel records were made and removed from the state office by Mr. Kenney without authorization. Finally, the memory of one state owned computer was wiped clean and a second state owned computer was removed by Mr. Kenney from the Putnam Courthouse . . . It is my understanding Mr. Solak was made aware of Mrs. Collins activities but left Mr. White's file as a part of her work assignment.
 To insure the impartiality and integrity of any decision made in this investigation it is imperative that the Office of the Chief State's Attorney takes control of this case."
Having received no response from the Chief State's Attorney on August 17, 1999, Mr. Meisler wrote another letter to Attorney Bailey which related the following:
". . . In the month since my letter, Assistant State's Attorney Deborah Collins has continued to involve herself in the White matter. CT Page 2752
 She was observed escorting both Adam Auclair and Aaron Auclair in to the Danielson State Police Barracks. Both of the Auclair boys were special deputy sheriffs and have admitted being involved in both the destruction of files ordered by the former High Sheriff of Windham County and the erasure of records from computers in the Windham County Sheriff's Office. As I indicated in my earlier letter, Assistant State's Attorney Collins was also involved in the shredding of files.
 At this time, I must insist that if your office does not assume responsibility and supervision for any and all investigations relating to Thomas White, the matter be referred to one of the other State's Attorneys for supervision and review . . .
On September 13, 1999, Thomas White was arrested on 11 charges on a warrant presented by the Windham County State's Attorney's Office. In a news conference at the Danielson courthouse on September 13, 1999, in addition to statements made by High Sheriff White, Mr. Meisler, plaintiff's decedent, said, "the Windham County State's Attorney's Office should be removed from the case because Assistant State's Attorney Debra Collins is mated to Charles Collins, a former deputy sheriff and Kenney supporter. The Norwich Bulletin report of the arrest and news conference on September 14, 1999 stated, "Meisler claimed Debra Collins helped shred documents that could help White."
While the Norwich Bulletin reported these statements and attributed the comment about the documents being favorable to Sheriff White to Attorney Meisler, on October 5, 1999 the Norwich Bulletin printed a correction at Attorney Meisler's request which stated the following:
"Because of a reporting error, allegations concerning the shredding of documents in stories about the arrest of Windham County High Sheriff Thomas White were misrepresented. In stories published in the Norwich Bulletin Sept. 14 and Oct. 1, Arthur P. Meisler was reported to have said that Assistant State's Attorney Debra Collins shredded documents in the Windham County High Sheriff's office, and that these documents could have helped White's case. Meisler, who is White's attorney, did not state the destroyed documents could help his client's case. CT Page 2753
 In the affidavit supporting White's arrest warrant, prosecutors anticipated that shredded documents would figure in the case. The affidavit quotes Collins as saying that Henry Bourgeois, a sheriff's captain also arrested in September, had made allegations that Collins had shredded documents favorable to White."
Thus it appears that the statement in the initial news article that Collins shredded documents which could have helped White's case was incorrectly attributed to Meisler. In fact, according to the correction, it apparently appeared in an affidavit prepared by Assistant State's Attorney Debra Collins, a plaintiff.
Those facts gave rise to the instant lawsuits. In the operative Collins complaint, the 17 counts, are based upon the three letters referenced above as well as the September 14, 1999 Norwich Bulletin article. The claims on behalf of one or both Collins' are as follows: in libel, false light, tortious interference with a business relationship and negligent and intentional infliction of emotional distress.
The plaintiffs admit that Attorney Meisler was an attorney "who was representing for a fee a client who was subject of a criminal investigation. "
In the Auclairs' case the substituted complaint contains eight counts. The Auclairs assert the claims of liable, false light, negligent and intentional affliction of emotional distress. These claims are based upon the statements in Attorney Meisler's August 17, 1999 letter to Chief State's Attorney Bailey setting forth:
 "An Assistant State's Attorney `was observed escorting both Adam Auclair and Aaron Auclair into the Danielson State Police barracks'.
 Both of the Auclair boys were special deputy sheriffs and have admitted being involved in both the destruction of files ordered by the former High Sheriff of Windham County and the erasure of records from computers in the Windham County Sheriff's Office."
As in the Collins' complaint, the Auclair plaintiffs allege that Attorney Meisler "was an attorney who, for a fee, was representing Thomas White, the High Sheriff of Windham County, in connection with a criminal investigation being conducted by the Connecticut State Police and the Office of the State's Attorney . . ." CT Page 2754
The defendant moves for summary judgment claiming inter alia that Attorney Meisler's statements are absolutely or qualifiedly privileged and as to the Collins' other claims, that those based upon the NorwichBulletin were not made by Mr. Meisler and the newspaper withdrew its attribution of them to him in its correction published on October 5, 1999. The defendant asserts that the claims are barred by various defenses as well.
Because the Court is granting the defendant's motions for summary judgment based upon the doctrine of absolute privilege, it will not address the other defenses she asserts.
Discussion
Pursuant to Practice Book section 17-45, "summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) Miles v. Foley, 253 Conn. 381, 385,752 A.2d 503 (2000); Strada v. Connecticut Newspapers, Inc., 153 Conn. 313,316-17, 477 A.2d 1005 (1984). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted.)Sherwood v. Danbury Hospital, 252 Conn., 193, 201, 746 A.2d 730 (2000). "In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist." Nolan v. Borkowski, 206 Conn. 495, 500, 538 A.2d 1031
(1988). "The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts . . ." (Internal quotation marks omitted.) Hertz Corp. v. Federal Insurance Co.,245 Conn. 374, 381, 713 A.2d 820 (1998). "To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact." (Internal quotation marks omitted.) Witt v. St. Vincent'sMedical Center, 252 Conn. 363, 372 n. 7, 746 A.2d 753 (2000). "The motion for summary judgment is designed to eliminate the delay and expense of litigating an issue when there is no real issue to be tried." Wilson v.New Haven, 213 Conn. 277, 279, 567 A.2d 829 (1989).
In both cases the defendant asserts that her decedent had an absolute right to make the communications in the letters referenced and in the public statement which appeared in the Norwich Bulletin on September 14, 1999. She asserts that it is well established Connecticut law that attorneys are absolutely immune from liability for defamatory communications associated with pending or potential litigation. She CT Page 2755 asserts that Connecticut courts have adopted the Restatement (Second) of Torts § 586 which states:
 "An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding." (Emphasis supplied.)
The defendant properly relies upon the case of Petyan v. Ellis,200 Conn. 243, 245-6, 510 A.2d 1337 (1986) for this proposition. InPetyan our Supreme Court stated that it is a
 longstanding common law rule that communications uttered or published in the course of judicial proceedings are absolutely privileged so long as they are in some way pertinent to the subject of the controversy . . . the effect of an absolute privilege is that damages cannot be recovered for a defamatory statement even if it is published falsely and maliciously . . . the policy underlying the privilege is that in certain situations the public interest in having people speak freely outweighs the risk that individuals will occasionally abuse the privilege by making false and malicious statements. (Citations omitted). Id.
While the term "judicial proceeding" has not been precisely defined, our jurisprudence has applied the term broadly. Our Superior Court has stated that "[i]t includes for example, lunacy, bankruptcy or naturalization proceedings, and an election contest." Magnan v. AnacondaIndustries, Inc., 37 Conn. Sup. 38, 42, Berdon, J., (1980), rev'd on other grounds, 193 Conn. 558, 479 A.2d 781 (1984).
The plaintiff asserts that the privilege does not apply unless the statement is allegedly made "in good faith," citing Magnan at page 45. Plaintiffs claim that there is a triable issue of fact and that summary judgment must be denied, because the issue of the good faith of Attorney Meisler must be determined by the trier of fact. Their interpretation of the good faith requirement is incorrect. As defined in Magnan, id., a statement which is made preliminarily to a proposed judicial proceeding requires that the proposed proceeding itself must be actually contemplated in good faith and under serious consideration. Id., page 45. See also Restatement (Second) Torts § 588, e. Our Supreme Court CT Page 2756 has held that the absolute privilege extends "to every step of the proceeding until final disposition. " To apply the good faith requirement as plaintiffs propose is contrary to the broad pronouncement of our courts that an "absolute privilege would prevent damages from being recovered for a defamatory statement even if it is published falsely and maliciously." Petyan, id. at 246.
There can be no question that the communications in question were part of Attorney Meisler's representation of Mr. White in the criminal investigation. In fact, plaintiffs have admitted as much. The Restatement (Second) Torts § 586 provides that ". . . an attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of . . . a judicial proceeding in which he participates as counsel." Our cases apply this privilege in employment related cases and other cases where only property interests are at stake. Clearly in a criminal proceeding where the accused has a constitutional right to the effective assistance of counsel the privilege must apply to all stages of the proceeding.[1]
The issue of whether a privilege applies is a question of law for the court to decide. See Magnan v. Anaconda Industries, Inc., 37 Conn. Sup. 38,43 (1980) (Berdon, J.) overruled on other grounds 193 Conn. 558,479 A.2d 781 (1984). Summary judgment is a proper procedural stage for the resolution of this privilege issue. See Preston v. O'Rouke,2000 W.L. 1281825 Conn. Super. 2000. CV99-0071011S, August 28, 2000, Bishop, J.
The scope of this absolute immunity is not limited to the defamation claims. Any cause of action based upon a privileged communication by a lawyer in the course of the representation of his client in a judicial proceeding is covered. Petyan v. Ellis, 200 Conn. 243, 510 A.2d 1337
(1986).
The motions for summary judgment are granted.
McLachlan, J.