# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN RE:  ASBESTOS LITIGATION:    )
    )
LARRY CECIL STURGILL and    )
JILL STURGILL,    )
    )
       Plaintiffs,    )    C.A. No. N15C-12-188 ASB
    )
       v.    )
    )
3M COMPANY, INC. et al.,    )
    )
       Defendants.    )

Submitted: October 5, 2017
Decided: December11, 2017

Upon Defendant Union Carbide Corporation's Motion for Summary Judgment

## GRANTED.

## ORDER

David W. deBruin, Esquire, The deBruin Firm LLC, 1201 North Orange Street, Suite 500, Wilmington, DE 19801, Attorney for Plaintiffs, Larry Cecil Sturgill and Jill Sturgill; Sam I. Iola, Esquire, Simon Greenstone Panatier Bartlett, 3232 McKinley Avenue, Suite 610, Dallas, TX 75204, Of Counsel.

Joseph S. Naylor, Esquire, Beth E. Valocci, Esquire, Schwartz Campbell, LLC, 300 Delaware Avenue, Suite 1410, Wilmington, DE 19801, Attorneys for Defendant Union Carbide Corporation.

**WHARTON, J.**

This 11th day of December, 2017, upon consideration of Defendant Union Carbide Corporation's Motion for Summary Judgment,[1] Plaintiffs' Memorandum in Opposition,[2] Defendant's Reply,[3] oral argument, and the record in this matter, it appears to the Court that:

1.      Plaintiff Larry Cecil Sturgill ("Mr. Sturgill") died of mesothelioma on February 21, 2016.[4]  Throughout his life, he worked with a variety of asbestos-containing products while performing automotive maintenance and repair, and while working as a construction laborer, painter, welder, and roofer.[5]  Relevant to the claims against Union Carbide Corporation ("Union Carbide") is the approximately two years between 1971 and 1973 when Mr. Sturgill worked for Curtis Poland Construction in Arcola, Virginia doing home remodeling and construction labor.[6] During that time he performed renovation work on approximately six houses by, among other things, installing sheetrock and spackling holes including applying and sanding joint compound.[7]  He was exposed to three brands of joint compound –

---

[1] D.I. 158.
[2] D.I. 170.
[3] D.I. 177.
[4] D.I. 170 at 1.
[5] D.I. 158 at 2.
[6] *Id.*; D.I. 170 at 1.
[7] D.I. 58 at 3.

Durabond, Gold Bond and U.S. Gypsum.[8] Approximately three quarters of the time, he worked with U.S. Gypsum.[9] Union Carbide asserts, and Plaintiffs do not contest, that Durabond joint compound contained no Union Carbide asbestos.[10] Apparently for that reason, the parties have focused on Gold Bond, manufactured by National Gypsum, and U.S. Gypsum joint compounds.

2.      Defendant Union Carbide was a diversified chemical company during the relevant time frame. Union Carbine acknowledges that a "small portion" of its business involved the bulk sale of raw asbestos to other companies for use in other products, including joint compound.[11] Union Carbide mined and milled a "unique short-fiber, tremolite-free, chrysotile asbestos fiber known as Calidria" which it sold to manufacturers, who in turn used it to manufacture their own products.[12] Union Carbide maintains that it never sold any Calidria to U.S. Gypsum's Staten Island, New York facility, which was the manufacturing and distribution facility for the Mid-Atlantic region, until 1975.[13] Union Carbide also claims that it was a comparatively minor supplier of asbestos to National Gypsum, which was primarily supplied with asbestos by its own subsidiary.[14] For those reasons, Union Carbide

---

[8] Id.
[9] Id. at 3-4.
[10] Id. at 5.
[11] Id. at 1.
[12] Id. at 4.
[13] Id. at 4-5.
[14] Id.

3

contends, Plaintiffs cannot establish that Mr. Sturgill worked with any joint compound that contained Union Carbide's Calidria.[15] Union Carbide further argues that, under Virginia substantive law, which governs this case, as a bulk supplier of raw material to a sophisticated manufacturer, it has no duty to end users such as Mr. Sturgill, for any dangers associated with the manufacturer's end product.[16] Finally, Union Carbide argues that even assuming Mr. Sturgill was exposed to products containing Union Carbide's asbestos, and further assuming that Union Carbide had a duty to Mr. Sturgill, there still is insufficient evidence of causation under Virginia law.[17]

3.    Plaintiffs, on the other hand, cite to Union Carbide's own estimates that its Calidria products accounted for approximately fifty percent of the total amount of asbestos used in tape joint compounds in the early 1970s, supplying Calidria to both U.S. Gypsum and National Gypsum.[18]  Both U.S. Gypsum and National Gypsum purchased asbestos from Union Carbide.[19]  Plaintiffs also cite internal documents from National Gypsum and interrogatory responses in other cases in an effort to establish that in 1969 it embarked on a major nationwide reformulation of its Gold Bond joint compound products which involved the exclusive use of Union

[15] *Id.*
[16] *Id.* at 7.
[17] *Id.* at 8-9.
[18] D.I. 170 at 3-4.
[19] *Id.*

4

Carbide's Calidria.[20] Plaintiffs also argue that Union Carbide cannot avail itself of the bulk supplier defense because it affirmatively concealed the dangerousness of Calidria from its customers.[21] Finally, Plaintiffs argue that a jury could reasonably conclude that Mr. Sturgill's exposure to Calidria was a proximate cause of his mesothelioma.[22]

4.      In reply, Union Carbide reiterates its point that it never sold Calidria to U.S. Gypsum's Staten Island facility and that the Staten Island facility was the sole supplier of U.S. Gypsum's joint compound to the mid-Atlantic region, including Virginia.[23] It also disputes Plaintiffs' contention that Union Carbide was the sole source of National Gypsum's asbestos from 1967 through 1975.[24] Union Carbide cites records from National Gypsum's Baltimore facility – the sole supplier to the mid-Atlantic region, including Virginia – to show that National Gypsum received almost 85% of its annual asbestos supply from its own asbestos mine, and only 15% from Union Carbide.[25] It further disputes the import of the internal documents and interrogatory answers cited by Plaintiffs and instead points to actual National Gypsum business records showing its receipt of asbestos from companies other than

---

[20] *Id.* at 4-5.
[21] *Id.* at 6-9.
[22] *Id.* at 13-14.
[23] D.I. 177 at 2.
[24] *Id.* at 3.
[25] *Id.*

Union Carbide between 1967 and 1975.[26] Union Carbide also references later interrogatories clarifying the earlier ones cited by Plaintiffs to remove what it says is an inaccurate implication that Union Carbide was National Gypsum's sole supplier of asbestos.[27] Finally, Union Carbide again argues that under Virginia law, as a bulk seller to a sophisticated manufacturer, it had no duty to warn National Gypsum about the dangers of asbestos.[28]

5.      Super. Ct. Civ. R. 56(c) provides that summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." When considering a motion for summary judgment, the Court's function is to examine the record to determine whether genuine issues of material fact exist "but not to decide such issues."[29] The moving party bears the initial burden of demonstrating that the undisputed facts support his claims or defenses.[30] If the moving party meets its burden, then the burden shifts to the non-moving party to demonstrate that there are material issues of fact to be resolved by the ultimate fact-finder.[31] Summary judgment will be granted if, after viewing the record in the light most favorable to the non-moving party, no genuine

---

[26] *Id.* at 3-5.
[27] *Id.* at 4.
[28] D.I. 171 at 6.
[29] *Merrill v. Crothall-Am., Inc.,* 606 A.2d 96, 99-100 (Del. 1992).
[30] *Moore v. Sizemore,* 405 A.2d 679, 681 (Del. 1979).
[31] *Brzoska v. Olson,* 668 A.2d 1355, 1364 (Del. 1995).

6

issues of material fact exist and the moving party is entitled to judgment as a matter of law.[32] Summary judgment will not be granted if there is a material fact in dispute or if "it seems desirable to inquire more thoroughly into [the facts] in order to clarify the application of the law to the circumstances."[33] The Court should not "indulge in speculation and conjecture; a motion for summary judgment is decided on the record presented and not on evidence potentially possible."[34]

6.      As previously noted, there appears to be no dispute that Union Carbide did not supply asbestos for Durabond joint compound. Thus, the Court must determine if there is a genuine issue of material fact as to whether Mr. Sturgill was exposed to asbestos supplied by Union Carbide in U.S. Gypsum's joint compound and in National Gypsum's Gold Bond joint compound. If Union Carbide was simply one of several suppliers of asbestos to joint compound manufacturers, it cannot reasonably be inferred that the asbestos to which Mr. Sturgill was exposed was supplied by Union Carbide.[35] The Court reserved decision after oral argument because it wanted to review the documents underpinning the parties' contentions. Having done so, the Court finds that summary judgment in favor of Union Carbide is warranted. At best, the deposition

---

[32] *Merrill*, 606 A.2d at 99-100.
[33] *Ebersole v. Lowengrub*, 180 A.2d 467, 470 (Del. 1963).
[34] *In re Asbestos Litig.*, 509 A.2d 1116, 1118 (Del. Super. 1986), *aff'd sub nom, Nicolet, Inc. v. Nutt*, 525 A.2d 146 (Del. 1987).
[35] *See Nutt v. A./C. & S. Co., Inc.* 517 A.2d 690 (Del. Super. 1986).

testimony of Howard Bowman cited by Plaintiffs,[36] a representative United States Gypsum, establishes that Union Carbide was one of several suppliers of asbestos to U.S. Gypsum, and perhaps was the sole supplier for joint compound at U.S. Gypsum's South Gate facility in California, which only distributed products to U.S. Gypsum's Western Region. It does not speak at all to Union Carbide's representation that it did not supply any Calidria to another of U.S. Gypsum's facilities on Staten Island, New York – the facility responsible for supplying joint compound to Virginia in the Mid-Atlantic Region. The specific claim that Union Carbide never sold Calidria to U.S. Gypsum's Staten Island until 1975 (outside of the relevant time frame) was unrebutted by Plaintiffs. As a result, there is nothing in the record to support the allegation that the U.S. Gypsum joint compound to which Mr. Sturgill was exposed contained Union Carbide's Calidria.

7. With respect to National Gypsum, Union Carbide has produced interoffice correspondence from the Gold Bond Division of National Gypsum dated February 11, 1972 breaking down the amounts of asbestos from National Asbestos (National Gypsum's subsidiary) and Union Carbide for each of its four plants for 1971.[37] For the Baltimore plant, Gold Bond used 981,900 pounds of asbestos from National Asbestos and only 163,880 pounds from Union Carbide.

_____

[36] *See* D.I. 170 at 4.
[37] *See* D.I. 158 at Ex. G.

8

The only plant where Union Carbide was the exclusive supplier of asbestos was the Long Beach plant, presumably because of its proximity to Union Carbide's Calidria milling facility in King City, California.[38] This evidence forecloses any genuine issue of material fact as to whether or not Union Carbide was the sole supplier of asbestos to National Gypsum for Gold Bond joint compound. It was not. Accordingly, Plaintiffs cannot establish that he was exposed to Union Carbide's asbestos in the joint compounds to which Mr. Sturgill was exposed.

Therefore, there being no genuine issues of material fact and Union Carbide being entitled to judgment as a matter of law, Defendant Union Carbide Corporation's Motion for Summary Judgment is **GRANTED**.

**IT IS SO ORDERED.**

_____
Ferris W. Wharton, J.

---

[38] *Id.*; D.I. 158 at Ex. D, ¶ 3.