# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MICHAEL DUNN, M.D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2018-0934 MTZ |
| | ) | |
| FASTMED URGENT CARE, P.C.; | ) | |
| FASTMED HOLDINGS I, LLC; | ) | |
| FASTMED HOLDINGS, LLC; URGENT | ) | |
| CARES OF AMERICA HOLDINGS I, | ) | |
| LLC; and KYLE BOHANNON, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Date Submitted: May 29, 2019
Date Decided: August 30, 2019

Neil R. Lapinski, Phillip A. Giordano, and Kate A. Mahoney, GORDON, FOURNARIS & MAMMARELLA, P.A., Wilmington, Delaware, *Attorneys for Plaintiff Michael Dunn, M.D.*

Kathleen M. Miller and Kelly A. Green, SMITH, KATZENSTEIN & JENKINS LLP, Wilmington, Delaware; Andrew Federhar and Jessica Gale, SPENCER FANE LLP, Phoenix, Arizona, *Attorneys for Defendants FastMed Urgent Care P.C., FastMed Holdings LLC, FastMed Holdings I LLC, Urgent Cares of America Holdings I LLC, and Kyle Bohannon.*

**ZURN, Vice Chancellor.**

The company at the heart of this case provides urgent care medical services in Arizona, and employed the plaintiff, who is trained as a physician, as an executive. The company went through a merger, after which the plaintiff left the company. The plaintiff asserts the post-acquisition company wronged him while negotiating the terms of his employment and by asserting a restrictive covenant after he left. The plaintiff has failed to plead wrongdoing under Delaware law that is justiciable by this Court.

The first source of wrongdoing is a series of oral promises, which are difficult to enforce in the shadow of a series of written agreements. In connection with the merger, the parties executed a contract selling the plaintiff's interest to the defendants, as well as an employment agreement. The defendants also allegedly promised to deviate from the terms of those agreements, but then failed to deliver; instead, the defendants performed under the written agreements. The plaintiff asserts the defendants defrauded him and breached the implied covenant of good faith and fair dealing. On the defendants' motion to dismiss, I conclude the fraud claims impose a weighty pleading burden that the plaintiff fails to satisfy, and the implied covenant claim is only available in certain circumstances not present here.

The second source of wrongdoing is the defendants' assertion of a restrictive covenant contained in the contract selling the plaintiff's interest. That five-year restrictive covenant prohibited the plaintiff from working in a competitive executive

2

capacity, but did not prohibit him from practicing medicine. The restrictive covenant contained Delaware forum and choice of law provisions. The plaintiff eventually resigned from the post-merger company, and accepted a similar executive position with an Arizona competitor. The defendants notified the competitor that the plaintiff's employment would be in violation of the restrictive covenant. Consequently, the competitor rescinded its employment offer. The plaintiff contends that the non-compete provision is unenforceable under Delaware's statute governing restrictions on the practice of medicine, and that the defendants' assertion of the restrictive covenant therefore amounts to intentional interference with the plaintiff's relationship with his prospective employer. I disagree.

The plaintiff also contends that the defendants' efforts to enforce the non-compete amount to defamation per se and that the defendants' acts constitute civil conspiracy. In the absence of any other well-pled claim, this Court lacks subject matter jurisdiction over the plaintiff's defamation claim, and there is no underlying wrong on which to base his conspiracy claim. The motion to dismiss is granted.

## I.   BACKGROUND

I draw the facts from the allegations in and documents incorporated by reference or integral to the Complaint.[1]  I must accept as true the Complaint's well-pled factual allegations and draw all reasonable inferences from those allegations in Plaintiff's favor.[2]

### A.   Dunn Executes A Letter Of Transmittal As Part Of FastMed's Acquisition Of Urgent Cares.

Plaintiff Michael Dunn is a physician licensed to practice medicine in the state of Arizona.  In 2003, Dunn became a member and manager of an Arizona professional limited liability company, TriCity Express Care, PLLC, dba Urgent Care Express ("Urgent Cares"), that offered urgent care services.  Urgent Cares was acquired in 2011; the surviving entity is also referred to as Urgent Cares.  In 2012, Dunn became Urgent Cares' Chief Medical Officer, Arizona, and signed an employment agreement.  In May 2015, Dunn sold his ownership interest in Urgent Cares to FastMed Holdings, LLC, when that entity acquired Urgent Cares pursuant to a Purchase Agreement and Plan of Merger entered into by several affiliated companies.

---

[1] *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 320 (Del. 2004).  All citations to the Complaint are to Plaintiff's Verified Complaint.  Docket Item ("D.I") 1.

[2] *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006).

At first, Dunn refused to sign a Letter of Transmittal to sell his interest in Urgent Cares "due to disagreements regarding the scope of [its] non-compete clause."[3] On May 28, 2015, Dunn communicated these concerns to two representatives of FastMed affiliates: Kyle Bohannon, a manager of FastMed Holdings I, LLC, and Kevin Blank, CEO of FastMed Urgent Care, P.C. "Bohannon and Blank responded to Dunn's concerns by communicating to Dunn that he would be unable to redeem his Profits Interest Units if he refused to sign the Letter of Transmittal."[4] Blank then suggested "amend[ing] the language of the non-compete to allow for Dunn to continue to work in the urgent care field."[5] The three "agreed that at the conclusion of the Purchase Agreement and Plan of Merger, Bohannon would redraft the Letter of Transmittal's non-compete clause to be for only three years, and that there would be a separate carve out that would permit Dunn to work as a medical director immediately following separation."[6]

Based on this agreement, Dunn signed the Letter of Transmittal that same day, exchanging his interest in Urgent Cares for approximately $1,000,000. The Letter of Transmittal contained the following restrictive covenant (the "Restrictive Covenant"):

---

[3] Compl. ¶ 17.

[4] *Id.*

[5] *Id.*

[6] *Id.* ¶ 18.

5

> Effective as of the Closing … [Dunn] hereby agrees that, from the Closing Date until the five (5) year anniversary of the Closing Date, [Dunn] will not, without the prior written consent of Buyer, directly or indirectly, engage in any activity, or participate or invest in, or provide or facilitate the provision of financing to, or assist, in each case, whether as owner, part-owner, equity holder, member, partner, director, officer, trustee, employee, agent or consultant, or in any other capacity, or by providing any financial, operational or technical assistance to any Person that engages in, any business, organization or other Person other than the Surviving Company or a Company Subsidiary whose business activities, products or services are competitive with the Business or that otherwise competes with the Business, or interview for any potential employment, directorship, advising or consulting relationship with any such business, organization or other Person, in each case, anywhere in the United States (collectively, "Prohibited Activities").[7]

The non-compete provision would not apply "in the case [that Dunn] is a physician, being employed as (and providing customary services of) a physician."[8] The Letter of Transmittal contained a Delaware choice of law and forum selection clause.[9]

### B. Dunn Signs An Employment Agreement With FastMed, Then Resigns After FastMed Demotes Him.

On or about June 22, 2015, Dunn entered into the Second Amended and Restated Employment Agreement (the "Second Employment Agreement") with

---

[7] *Id.* ¶ 20; *id.* Ex. B at 9.

[8] *Id.* Ex. B at 9.

[9] *Id.* Ex. B at 4 (incorporating Purchase Agreement into Letter of Transmittal); D.I. 12 Ex. 2 §§ 14.08–.09.

FastMed Urgent Care, P.C. ("FastMed"), as Urgent Cares' successor in interest, and assumed the title of "Regional Chief Medical Officer, and President, Arizona."[10] The Second Employment Agreement applied during Dunn's employment and for six months thereafter. The Second Employment Agreement was contingent upon the consummation and closing of the Purchase Agreement. The Purchase Agreement closed as planned, and Dunn became subject to the Second Employment Agreement.

At some point, "Bohannon and other executives expressly assured Dunn that the position of employment offered to Dunn pursuant to the [Second Employment Agreement] was a long-term position."[11] But the Second Employment Agreement provided that Dunn was an at-will employee.[12] It also gave Dunn the right to terminate his employment for "Good Reason" as defined thereunder; if he did so, he would receive certain payments and benefits.[13] The Second Employment Agreement defined "Good Reason" as including "the Company's assignment of [Dunn] (without his consent) to a position, responsibilities, or duties of a materially

---

[10] Compl. ¶ 22; *id.* Ex. C.

[11] *Id.* ¶ 24.

[12] *Id.* Ex. C § 5(a), (d).

[13] *Id.* Ex. C § 5(b).

7

lesser status or degree of responsibility than his position, responsibilities, and duties set forth [herein]."[14]

In August 2015, Bohannon informed Dunn that FastMed had eliminated Dunn's position, and that Dunn would be reporting to a then-junior physician that was being promoted to Chief Medical Officer. Dunn resigned for Good Reason, and the parties entered into a Separation Agreement dated September 21, 2015.[15] The Separation Agreement contained an Arizona choice of law and forum selection clause.[16]

**C.    Dunn Receives A Job Offer That Leads To Litigation Over The Scope Of Prior Agreements.**

In August 2016, nonparty Banner Health offered Dunn the position of Physician Executive, which Dunn accepted. FastMed's counsel threatened legal action, "stating that Dunn and Banner Health would be in violation of Dunn's alleged ongoing restrictive covenant arising out of the Letter of Transmittal agreed to on May 28, 2015."[17] Banner Health backed away and did not let Dunn start his job, informing him that it would rescind the employment offer if he could not resolve the

---

[14] *Id*. Ex. C § 23(e).

[15] *Id*. Ex. D; *id.* Ex. E.

[16] *Id*. Ex. D. § 11(g).

[17] *Id*. ¶ 35; *id.* Ex. G.

matter.[18] Dunn's counsel and FastMed exchanged letters that did not resolve the dispute, leading Dunn to seek judicial relief in Arizona.[19]

Dunn's Arizona complaint, filed on September 26, 2016, sought a temporary restraining order, preliminary injunction, and order to show cause concerning FastMed's alleged interference with his employment with Banner Health. On February 7, 2017, the Arizona Court dismissed Dunn's complaint, ruling that the Letter of Transmittal's Delaware forum selection clause applied such that Dunn had to sue in Delaware.[20] Dunn appealed the decision, but lost in the Arizona Court of Appeals in June 2018.[21]

On December 26, 2018, Dunn filed suit here against FastMed; Urgent Cares of America Holdings I, LLC; FastMed Holdings, LLC; FastMed Holdings I, LLC; and Bohannon (together, "Defendants").[22] The Complaint seeks injunctive relief to prevent Defendants from applying the Restrictive Covenant (Count One) and a declaratory judgment that the Restrictive Covenant violates Delaware law and public policy (Count Seven). It also seeks damages for alleged breach of the implied

---

[18] *Id.* Ex. I.

[19] *Id.* Ex. H; *id.* Ex. J.

[20] *Id.* Ex. K.

[21] *Dunn v. FastMed Urgent Care PC*, 424 P.3d 436, 438 (Ariz. Ct. App. 2018).

[22] Plaintiff named Comvest Investment Partners IV-A, L.P., and Comvest Investment Partners Holdings, LLC, as defendants in the Complaint. Plaintiff voluntarily dismissed these two parties on April 10, 2019. D.I. 18.

9

covenant of good faith and fair dealing (Count Two), negligent misrepresentations (Count Three), fraud (Count Four), intentional interference with contractual relationship (Count Five), and civil conspiracy (Count Six). Dunn also seeks injunctive relief and damages for defamation per se (Count Eight).

Defendants moved to dismiss on February 8, 2019. The parties completed briefing on April 23, and I heard oral argument on May 29.

## II.  ANALYSIS

The standards for reviewing a motion to dismiss for failure to state a claim for relief are well settled:

> [A] trial court should accept all well-pleaded factual allegations in the Complaint as true, accept even vague allegations in the Complaint as "well-pleaded" if they provide the defendant notice of the claim, draw all reasonable inferences in favor of the plaintiff, and deny the motion unless the plaintiff could not recover under any reasonably conceivable set of circumstances susceptible of proof.[23]

The motion to dismiss "will be granted where it appears with 'reasonable certainty' that the plaintiff could not prevail on any set of facts that can be inferred from the pleadings."[24]  Applying this standard, each of Dunn's counts is dismissed.

---

[23] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Hldgs. LLC*, 27 A.3d 531, 536 (Del. 2011) (citation omitted).

[24] *Leonard Loventhal Account v. Hilton Hotels Corp.*, 2000 WL 1528909, at *3 (Del. Ch. Oct. 10, 2000) (quoting *Solomon v. Pathe Comm'ns Corp.*, 672 A.2d 35, 38 (Del. 1996)), *aff'd sub nom. Account v. Hilton Hotels Corp.*, 780 A.2d 245 (Del. 2001).

**A.** **Dunn Has Not Stated A Claim For Breach Of The Implied Covenant.**

According to Dunn, the Letter of Transmittal and the Second Employment Agreement "were part of the plan by which he would continue operating in his executive role as Regional Chief Medical Officer and President, Arizona, as contemplated by the [Second Employment Agreement]."[25] He claims Defendants "breached the implied covenant of good faith and fair dealing by accepting the benefits of Dunn's cooperation, his surrender of Profits Interest Units, and his good faith attempts to continue his position of employment with FastMed Urgent Care, P.C. pursuant to their contracts" and then "[eliminating] his position shortly after, and attempting to enforce an inapplicable restrictive covenant ."[26] Dunn fails to state a claim for breach of the implied covenant of good faith and fair dealing.

"The implied covenant of good faith and fair dealing inheres in every contract and 'requires "a party in a contractual relationship to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits" of the bargain.'"[27] "To state a claim for breach

---

[25] Compl. ¶ 63.

[26] *Id.* ¶ 64.

[27] *Kuroda v. SPJS Hldgs., L.L.C.*, 971 A.2d 872, 888 (Del. Ch. 2009) (quoting *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 442 (Del. 2005)); *see also Merrill v. Crothall-Am., Inc.*, 606 A.2d 96, 101 (Del. 1992) ("[E]very employment contract made under the laws of this State, consonant with general principles of contract law, includes an implied covenant of good faith and fair dealing.").

11

of the implied covenant, a litigant must allege a specific obligation implied in the contract, a breach of that obligation, and resulting damages."[28]   The implied covenant is often invoked in two situations:

> [O]ne … is when it is argued that a situation has arisen that was unforeseen by the parties and where the agreement's express terms do not cover what should happen.  The other situation … is when a party to the contract is given discretion to act as to a certain subject and it is argued that the discretion has been used in a way that is impliedly proscribed by the contract's express terms.[29]

The implied covenant may also be invoked when the parties' "conduct frustrates the 'overarching purpose' of the contract by taking advantage of their position to control implementation of the agreement's terms."[30]

In any case, the implied covenant cannot be used to "base a claim … on conduct authorized by the terms of the agreement."[31]  "Only when it is clear from the writing that the contracting parties would have agreed to proscribe the act later complained of … had they thought to negotiate with respect to that matter may a

---

[28] *Fortis Advisors LLC v. Dialog Semiconductor PLC*, 2015 WL 401371, at *3 (Del. Ch. Jan. 30, 2015) (internal quotation marks omitted) (quoting *Matthew v. Laudamiel,* 2012 WL 605589, at *16 (Del. Ch. Feb. 21, 2012)).

[29] *Oxbow Carbon & Minerals Hldgs., Inc. v. Crestview-Oxbow Acq., LLC*, 202 A.3d 482, 504 n.93 (Del. 2019) (citations omitted).

[30] *Corp. Prop. Assocs. 14 Inc. v. CHR Hldg. Corp.*, 2008 WL 963048, at *5 (Del. Ch. Apr. 10, 2008) (quoting *Dunlap*, 878 A.2d at 442).

[31] *Dunlap*, 878 A.2d at 441; *see also Allen v. El Paso Pipeline GP Co., L.L.C.*, 113 A.3d 167, 183 (Del. Ch. 2014) ("recognizing "the implied covenant will not infer language that contradicts a clear exercise of an express contractual right" (quoting *Nemec v. Shrader*, 991 A.2d 1120, 1127 (Del. 2010))).

party invoke the covenant's protections."[32]  "Where the contract speaks directly regarding the issue in dispute, '[e]xisting contract terms control … such that implied good faith cannot be used to circumvent the parties' bargain, or to create a "free-floating duty unattached to the underlying legal documents."'"[33]

Dunn premises his implied covenant claim on "a set of contracts [that] existed between Dunn and Defendants, including:  the Letter of Transmittal, the [Second Employment Agreement], and the Separation Agreement."[34]  Dunn does not allege the implied covenant fills a gap, nor does he allege any misuse of a granted discretionary power.  Rather, he contends Defendants engaged in a bait-and-switch to induce him into signing the Letter of Transmittal and Second Employment Agreement, by promising long-term employment at a senior level, but then eliminating his position, demoting him, and enforcing the Restrictive Covenant. Dunn's claim flows from his expectation that that the Letter of Transmittal and Second Employment Agreement "were part of the plan by which he would continue operating in his executive role."[35]

Dunn's implied covenant claim is belied by the contracts he signed.  There are no terms to be implied in those contracts.  Rather, Dunn agreed to terms that

---

[32] *CHR Hldg. Corp.*, 2008 WL 963048, at *5 (quoting *Dunlap*, 878 A.2d at 442).

[33] *Fortis*, 2015 WL 401371, at *3 (quoting *Dunlap*, 878 A.2d at 441).

[34] Compl. ¶ 58.

[35] *Id.* ¶ 63.

13

contradict those he wishes to imply. Dunn expected that surrendering his interests in Urgent Cares would lead to a less restrictive non-compete agreement and a long-term, senior position with the post-merger company.[36] But he signed the Letter of Transmittal with a contradictory five-year term. He also signed the Second Employment Agreement with contradictory terms providing that: (1) FastMed could terminate Dunn's employment with or without cause,[37] and (2) Dunn could be demoted and thereafter resign for Good Reason.[38] Because the Letter of Transmittal and Second Employment Agreement speak directly to the issues in dispute, Dunn has failed to state a claim for breach of the implied covenant.[39]

Because Dunn brings his implied covenant claim in the context of his at-will employment, additional discussion is warranted. Delaware law carefully circumscribes implied covenant claims in the at-will employment context.[40] Dunn

---

[36] *Id.* ¶¶ 18, 24, 63, 64.

[37] *Id.* Ex. C § 5(a), (d).

[38] *Id.* ¶¶ 27–28.

[39] *See Dunlap*, 878 A.2d at 441 ("[O]ne generally cannot base a claim for breach of the implied covenant on conduct authorized by the terms of the agreement."); *Allen*, 113 A.3d at 183 (holding that covenant cannot be used to "contradict[] a clear exercise of an express contractual right" (citing *Nemec*, 991 A.2d at 1125)); *Fortis*, 2015 WL 401371, at *3 ("Where the contract speaks directly regarding the issue in dispute, '[e]xisting contract terms control … .").

[40] *See e.g.*, *Rizzitiello v. McDonald's Corp.*, 868 A.2d 825 (Del. 2005) (en banc); *E.I. DuPont de Nemours & Co. v. Pressman*, 679 A.2d 436 (Del. 1996); *Merrill*, 606 A.2d at 101.

14

relies on one such case, *E.I. DuPont de Nemours & Co. v. Pressman*,[41] in claiming Defendants' deception breached the implied covenant. "In Delaware, there is a 'heavy presumption that a contract for employment, unless otherwise expressly stated, is at-will in nature, with duration indefinite.' Although at-will employment remains a heavy presumption in this State, every employment contract contains an implied covenant of good faith and fair dealing."[42] However, "the implied covenant is to be narrowly construed."[43] "Courts have been reluctant to recognize a broad application of the [implied] Covenant out of a concern that the Covenant could thereby swallow the [employment-at-will] Doctrine and effectively end at-will employment."[44] In this balance, Dunn fails to state an implied covenant claim.

In *Pressman*, a supervisor "set out on a campaign to discredit" an employee and manufactured materially false grounds to cause his dismissal.[45] *Pressman* "relates solely to an act or acts of the employer manifesting bad faith or unfair dealing achieved by deceit or misrepresentation in falsifying or manipulating a record to create fictitious grounds to terminate employment."[46] Where the employee

---

[41] 679 A.2d 436 (Del. 1996).

[42] *Rizzitiello*, 868 A.2d at 830 (first quoting *Pressman*, 679 A.2d at 440; and then citing *Merrill*, 606 A.2d at 101).

[43] *Id.* at 831 (citing *Pressman*, 679 A.2d at 437).

[44] *Pressman*, 679 A.2d at 442 (citations omitted).

[45] *Id.* at 444.

[46] *Id.* at 443–44.

resigned, and was not terminated, the employee cannot show a breach of the implied covenant under *Pressman*.[47] It is undisputed that Dunn was not terminated; Dunn's employment ended with his resignation. Further, Dunn does not allege that Defendants falsified the grounds for his separation from FastMed. Although informative, *Pressman* cannot bear the weight of Count Two.

*Pressman* is among the progeny of *Merrill v. Crothall-American, Inc.*, in which a terminated employee alleged the employer "induced him to enter into the employment contract by concealing from him its intention to employ him only temporarily while allowing him to proceed under the belief that the duration of the employment was, at the least, indefinite. So stated, a valid claim for breach of an implied covenant of fair dealing is properly pleaded."[48] The Delaware Supreme

---

[47] *See Rizzitiello*, 868 A.2d at 831. The Delaware Supreme Court "recognized in *Pressman,* that an employee who voluntarily resigns rather than being terminated may have a claim for constructive discharge." *Id.* Dunn did not bring such a claim.

[48] 606 A.2d 96, 102 (Del. 1992). The Delaware Supreme Court contextualized *Merrill* within the balance between at-will employment and the implied covenant of good faith and fair dealing as follows:

> As a general rule, Delaware law creates a heavy presumption that a contract for employment, unless otherwise expressly stated, is at-will in nature with duration indefinite. We have identified four primary situations in which an employer's authority to terminate an employee is limited by the implied covenant of good faith and fair dealing: (1) where the employee's termination violates public policy, (2) where the employer misrepresents an important fact and the employee relies on it when deciding to accept a new position or to remain at a present one, (3) where the employer uses its superior bargaining power to deprive an employee of identifiable compensation related to an employee's past service, and (4) where an

16

Court explained that bad faith exists where an employer induces another to enter into an employment contract and its actions in doing so are intentionally deceptive.[49]

At first glance, the claim in *Merrill* appears to resemble Dunn's. But "the exceptions to the employment at-will doctrine are narrow and discrete."[50] Upon closer inspection, the facts before the Court and the facts in *Merrill* diverge in distinct and important ways. In *Merrill* and its progeny, the permissible claims were brought by employees who were terminated.[51] That is not the case here: Dunn voluntarily resigned for a contractually sanctioned reason.

*Merrill* also requires that the employer intend, at the moment of the misrepresentation, to act otherwise. "[T]o constitute a breach of the implied covenant of good faith, the conduct of the employer must constitute an aspect of fraud, deceit or misrepresentation."[52]

> The lodestar here is candor. An employer acts in bad faith when it induces another to enter into an employment contract through actions, words, or the withholding of information, which is intentionally

---

employer through deceit, fraud, and misrepresentation manipulates the record to create fictitious grounds to terminate employment.
*Bailey v. City of Wilm.*, 766 A.2d 477, 480 (Del. 2001) (footnote and internal quotation marks omitted).

[49] *Merrill*, 606 A.2d at 101.

[50] *Lord v. Souder*, 748 A.2d 393, 403 (Del. 2000).

[51] *See Pressman*, 679 A.2d at 439; *Merrill*, 606 A.2d at 98; *see also Rizzitiello*, 868 A.2d at 831–32 (recognizing application of the implied covenant to employees who are constructively discharged).

[52] *Merrill*, 606 A.2d at 101 (citation and internal quotation marks omitted).

17

deceptive in some way material to the contract. Such conduct constitutes an aspect of fraud, deceit or misrepresentation.[53]

"Absent bad faith, an employer has the freedom to terminate an at-will employment relationship for its own legitimate business, or even highly subjective, reasons."[54]

Dunn does not assert Defendants intended to employ him only temporarily, or to demote him, at the time they induced him to sign the Letter of Transmittal and Second Employment Agreement with promises of long-term senior employment. Dunn only pleads

> Defendants breached the covenant of good faith and fair dealing by accepting the benefits of Dunn's cooperation, his surrender of Profits Interest Units, and his good faith attempts to continue in his position of employment with FastMed Urgent Care, P.C. pursuant to their contracts, and proceeded to eliminate his position shortly after, and attempting to enforce an inapplicable restrictive covenant to ensure that Dunn cannot compete with FastMed Urgent Care, P.C.[55]

Dunn's pleading is premised on what he "expected," not what Defendants intended.[56] Dunn fails to plead the requisite intent and has therefore failed to state a claim for breach of the implied covenant under *Merrill*. Count Two is dismissed.

---

[53] *Id.* (internal quotation marks omitted).

[54] *Peterson v. Beebe Med. Ctr., Inc.*, 623 A.2d 1142, 1993 WL 102560, at *2 (Del. Mar. 24, 1993) (TABLE) (citing *Merrill*, 606 A.2d at 102).

[55] Compl. ¶ 64.

[56] *Id.* ¶ 63. In Dunn's Opposition to Defendants' Motion, he argues that Defendants intended to induce him into signing the Letter of Transmittal in order to consummate the Purchase Agreement and intended to subsequently terminate his employment. D.I. 16 at 12 ("While the deceit in *Pressman* was aimed at causing the employee's termination, the deceit here was intended to induce Dunn to sign the LOT in order to consummate the

**B.**   **Dunn Has Not Stated A Claim For Negligent Misrepresentation or Fraud.**

Dunn asserts claims of negligent misrepresentation (Count Three) and fraud (Count Four). Dunn's negligent misrepresentation claim is based on the Letter of Transmittal.[57] Specifically, Dunn alleges that "Defendants made statements to induce [him] to surrender his Profits Interest Units and to become subject to the restrictive covenant stated in the Letter of Transmittal."[58] Dunn's fraud claim is based on those same alleged statements, as well as alleged representations that he

Purchase Agreement, terminate Dunn's employment, and deprive him of the more favorable terms of the Second Agreement and Separation Agreement when the ink on the purchase agreement was barely dry."). He further argues that these facts were pled in the Complaint. *Id.* They were not pled under Count Two. Dunn's fraud claim pleads that Defendants knew the representations were false and that the sequence of events leads to the "logical conclusion" that Defendants intended to induce him into executing the Second Employment Agreement. *See* Compl. ¶¶ 75, 77. But Dunn did not attempt to meet the implied covenant's intent requirement until his Opposition. His brief cannot patch pleading deficiencies. *See*, *e.g.*, *Akrout v. Jarkoy*, 2018 WL 3361401, at *3 n.23 (Del. Ch. July 10, 2018), *rearg. denied,* 2018 WL 4501174 (Del. Ch. Sept. 19, 2018) ("Plaintiff's counsel's *post hoc* attempt to clarify the allegations in the Complaint in response to a motion to dismiss, while understandable given the paucity of the Complaint, cannot be received as a supplement or amendment to the pleading itself."); *Orman v. Cullman*, 794 A.2d 5, 28 n.59 (Del. Ch. 2002) ("[Plaintiff] improperly attempts to expand the scope of his complaint in his brief opposing the motion to dismiss … . At this stage of litigation, the Court is only permitted to consider the well-pleaded facts contained in the complaint and any documents incorporated by reference into that complaint … . Briefs relating to a motion to dismiss are not part of the record and any attempt contained within such documents to plead new facts or expand those contained in the complaint will not be considered.").

[57] Dunn does not mention the Second Employment Agreement in Count Three. *See* Compl. ¶¶ 66–71. My analysis of Dunn's negligent misrepresentation claim focuses solely on the Letter of Transmittal.

[58] *Id.* ¶ 67.

would have a "long-term position" under the Second Employment Agreement.[59]

Because events unfolded differently, Dunn argues the representations must be interpreted as fraudulent and intended to induce him into surrendering his Profits Interest Units and agreeing to the Restrictive Covenant.[60] Assuming for the sake of this motion that Dunn is permitted to rely on Defendants' extra-contractual statements,[61] Dunn has failed to state claims for fraud and negligent misrepresentation.

### 1. Dunn Has Failed To Plead Fraudulent Intent To Break A Promise.

In Delaware, fraud requires that the plaintiff allege "(i) a false representation, (ii) the defendant's knowledge of or belief in its falsity or the defendant's reckless indifference to its truth, (iii) the defendant's intention to induce action based on the

---

[59] Unlike his negligent misrepresentation claim, Dunn's fraud claim is based on both the Letter of Transmittal and the Second Employment Agreement. *Id.* ¶¶ 72–81.

[60] *Id.* ¶ 67; *see also id.* ¶ 75 ("The abrupt elimination of the position brings the logical conclusion that the statements to retain Dunn under the Letter of Transmittal and Second Amended and Restated Employment Agreement were fraudulent misrepresentations intended to induce Dunn into surrendering his Profits Interest Units and sign a restrictive covenant that was not agreed upon and unreasonable in scope.").

[61] Defendants argue Dunn disclaimed reliance on extra-contractual representations. D.I. 12 at 19–20. They point to Section 5.26 of the Purchase Agreement, D.I. 12 Ex. 2, and the Second Employment Agreement, Compl. Ex. C § 16. Case law suggests that neither provision prevents Dunn from asserting a fraud claim. *See, e.g.*, *FdG Logistics, LLC v. A & R Logistics Hldgs. Inc.*, 131 A.3d 842, 859 (Del. Ch. 2016); *Prairie Capital III, L.P. v. Double E Hldg. Corp.,* 132 A.3d 35, 50–51 (Del. Ch. 2015); *Abry P'rs V, L.P. v. F & W Acq. LLC*, 891 A.2d 1032, 1058–59 (Del. Ch. 2006). But I need not resolve this issue today because Counts Three and Four are properly dismissed on other grounds.

representation, (iv) reasonable reliance by the plaintiff on the representation, and (v) causally related damages."[62] Court of Chancery Rule 9(b) requires a plaintiff to plead fraud with particularity.[63] Specifically, Rule 9(b) mandates that

> [t]he factual circumstances to be "stated with particularity refer to the time, place, and contents of the false representations; the facts misrepresented; the identity of the person(s) making the misrepresentation; and what that person(s) gained from making the misrepresentation."[64]

Usually, intent can be pled generally.[65] But when a fraud claim hinges on promissory statements, or expressions as to what will happen in the future, a plaintiff must plead "particularized facts that allow the Court to infer that, at the time the

---

[62] *Prairie Capital*, 132 A.3d at 49 (citing *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983)).

[63] Ct. Ch. R. 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.").

[64] *GreenStar IH Rep, LLC v. Tutor Perini Corp.*, 2017 WL 5035567, at *10 (Del. Ch. Oct. 31, 2017) (quoting *Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*, 906 A.2d 168, 207–08 (Del. Ch. 2006), *aff'd sub nom. Trenwick Am. Litig. Tr. v. Billett*, 931 A.2d 438 (Del. 2007)), *aff'd*, 186 A.3d 799 (Del. 2018); *see also Steinman v. Levine*, 2002 WL 31761252, at *14 (Del. Ch. Nov. 27, 2002), *aff'd*, 822 A.2d 397 (Del. 2003) ("[A] well pleaded fraud allegation must include at least 'the time, place and contents of the false representations . . . and what [was] obtained thereby.'" (second alteration in original) (quoting Crescent/Mach I P'rs, L.P. v. Turner, 846 A.2d 963, 988 (Del. Ch. Sept. 29, 2000)).

[65] *See Grunstein v. Silva*, 2009 WL 4698541, at *13 (Del. Ch. Dec. 8, 2009) ("[A] traditional fraud claim … allows a plaintiff to plead intent generally.").

promise was made, the speaker had no intention of keeping it."[66]  In *Grunstein v. Silva*, this Court stated:

> [B]ecause the factual predicate of a promissory fraud claim is the speaker's state of mind at the time the statement is made, a general averment of a culpable state of mind is insufficient.  Instead, the plaintiff "must plead specific facts that lead to a reasonable inference that the promissor had no intention of performing at the time the promise was made."[67]

"This is, in part, because of the general rule that 'statements which are merely promissory in nature and expressions as to what will happen in the future are not actionable as fraud.'"[68]  "To anticipate the future and predicate falsehood upon an act to be done or omitted at a future day would change a mere broken promise into a fraud on the part of him who was bound to fulfill the engagement … ."[69]  "[A] party's failure to keep a promise does not prove the promise was false when made."[70]

---

[66] *MicroStrategy Inc. v. Acacia Research Corp.*, 2010 WL 5550455, at *15 (Del. Ch. Dec. 30, 2010); *see also Grunstein*, 2009 WL 4698541, at *13 (stating plaintiff must allege particularized facts that infer "the speaker had no intention of performing"); *Outdoor Techs., Inc. v. Allfirst Fin., Inc.*, 2001 WL 541472, at *4 (Del. Super. Apr. 12, 2001) ("Only when such statements are made with the present intention not to perform will courts endorse a fraud claim.").

[67] *Grunstein*, 2009 WL 4698541, at *13 (citing *Winner Acceptance Corp. v. Return on Capital Corp.*, 2008 WL 5352063, at *10 (Del. Ch. Dec. 23, 2008)).

[68] *Id.* (citing *Outdoor Techs.*, 2001 WL 541472, at *4).

[69] *Id.* (citation omitted).

[70] *Id.* (quoting *Berdel, Inc. v. Berman Real Estate Mgmt., Inc.*, 1997 WL 793088, at *8 (Del. Ch. Dec. 15, 1997)).

Dunn predicates his claim on promissory statements, or "expressions as to what will happen in the future."[71] When Dunn signed the Letter of Transmittal, he was aware of the five-year Restrictive Covenant. Dunn's fraud claim is based on his "oral agreement" with Bohannon and Blank to amend the Restrictive Covenant in the future, after the Letter of Transmittal had been signed. Similarly, when Dunn signed the Second Employment Agreement, its terms expressly rendered him an at-will employee who was subject to demotion. Dunn relies on promises by "Bohannon and other executives" that he would be retained in a "long-term position."[72] Defendants' statements that contradicted the written terms were promises to deviate from those terms in the future. Because Defendants failed to fulfill those promises, Dunn concludes that he has been defrauded. Without a proper pleading of intent, these promissory statements cannot support Dunn's fraud claim.

Dunn has not pled specific facts that lead to a reasonable inference that the Defendants had no intention of performing at the time of their promises. Dunn only pleads general averments of a culpable state of mind, stating that the "Defendants knew that the representations were false"[73] and that the sequence of events leads to

---

[71] *Id.* A promise of a future outcome is distinct from a misrepresentation of existing fact. "A false assertion presupposes that an event has occurred, that a duty has been performed, that a fact has intervened or that an authority exists, either or all of which may have induced the contract or prevented its being consummated." *Id.* (citation omitted).

[72] Compl. ¶ 24.

[73] *Id.* ¶ 77.

the "logical conclusion" that Defendants intended to induce Dunn to sign the agreements without fulfilling their promises.[74]

In particular, Dunn does not plead that Bohannon and Blank intended to break their alleged promise to renegotiate the Restrictive Covenant. He does not plead any explanation for why the alleged agreement altering the terms never materialized. All that is before the Court is that the parties subsequently entered into the Second Employment Agreement, which left the Restrictive Covenant in place. Similarly, Dunn has failed to plead that Defendants never intended to keep him in his senior position as promised. He does not plead any explanation as to why the Second Employment Agreement contradicted the alleged promises by enumerating Dunn's at-will employment status and permitting his demotion. Dunn has failed to plead that the Defendants never intended to keep their promises to renegotiate the Restrictive Covenant or to keep Dunn in a long-term position. He has failed to state a claim for promissory fraud.

### 2. Dunn Has Failed To Plead The Other Elements Of Fraud Under Rule 9(b).

To plead the other elements of his fraud claim under Rule 9(b), Dunn must adequately identify the "time, place, and contents of the false representations; the facts misrepresented; the identity of the person(s) making the misrepresentation; and

---

[74] *Id.* ¶ 75.

what that person(s) gained from making the misrepresentation."[75] Dunn is also required to identify specific statements by individual defendants.[76] Dunn's claim "has simply mirrored the language of the necessary fraud elements. [His] complaint contains no facts to support his conclusory allegations, as to the time, place or contents of the false representations."[77]

> In support of his fraud claim under the Letter of Transmittal, Dunn alleges:
>
> Directly preceding Dunn's signing of the Letter of Transmittal on or about May 28, 2015, Kyle Bohannon and Kevin Blank, then-CEO of FastMed Urgent Care, P.C., made specific representations to Dunn regarding the terms of the restrictive covenant and acknowledged Dunn's concerns regarding the scope of the agreement, ultimately culminating in an oral agreement to alter the terms of the restrictive covenant that would permit Dunn to work as a medical director immediately following separation.[78]

Dunn premises his claim on "specific representations" made by Bohannon and Blank, grouped together.[79] Dunn cannot adequately plead fraud based on allegations

---

[75] *GreenStar IH Rep, LLC*, 2017 WL 5035567, at *10 (quoting *Trenwick Am. Litig. Tr.*, 906 A.2d at 207–08).

[76] *Fortis*, 2015 WL 401371, at *8 ("[Plaintiff] does not even identify misrepresentations made by any particular individuals. He simply lumps all the Director Defendants together in his cause of action. [Plaintiff] is required to identify specific acts of individual defendants for his … claim to survive." (citing *Steinman*, 2002 WL 31761252, at *15)).

[77] *Steinman*, 2002 WL 31761252, at *14.

[78] Compl. ¶ 74.

[79] *Id.*; *see also id.* ¶ 18.

that Bohannon and Blank together represented a certain result without distinguishing as between them and identifying their specific statements.[80]

Dunn's allegations of fraud in the execution of the Second Employment Agreement are similarly untethered to any individual speaker. Dunn relies on assurances "that the position of employment offered to [him] pursuant to the [Second Employment Agreement] was a long-term position."[81] He alleges:

> Kyle Bohannon expressly stated to Dunn that Dunn's employment under the Second Amended and Restated Employment Agreement that he was needed not only to continue to run the Arizona market, but also that he would assist[] with running the Texas market, and that he was very much needed as an asset going forward.[82]

He also alleges "Kyle Bohannon and other executives of the Affiliated Companies further expressly assured Dunn that the position of employment offered to [him] pursuant to the [Second Employment Agreement] was a long-term position."[83]

"[T]he [C]omplaint fails to identify who made any particular misrepresentation … . Instead, the [C]omplaint asserts that one of [Bohannon and other executives] made the representations, but we do not know who allegedly made

---

[80] *See Steinman*, 2002 WL 31761252, at *15 ("[Plaintiff] is required to identify specific acts of individual defendants for his negligent misrepresentation claim to survive.").

[81] Compl. ¶ 24.

[82] *Id.* ¶ 75.

[83] *Id.* ¶ 24.

which statement(s)."[84]   While Dunn alleges that Bohannon "expressly stated" that he was "very much needed as an asset going forward,"[85] he improperly groups Bohannon together with "other executives" who allegedly assured Dunn that his was a "long-term position."[86]   Dunn cannot premise his claim on statements by Bohannon and "other executives" without identifying specific statements made by specific persons.[87]

> Dunn also fails to allege when he was assured a long-term position.
>
> Pleading when the alleged misrepresentations occurred is especially important where, as here, the alleged promises are of future performance … .   To defend against such assertions, a defendant logically must be apprised when the alleged statements were made in order to counter the assertion that it did not intend to keep its promise at that time.[88]

Dunn's Complaint does not allege when Defendants promised him long-term employment.  If Dunn's Complaint is read chronologically, any assurances of a long-term position were made *after* Dunn executed the Second Employment Agreement.[89] But Dunn's brief describes these statements as "the promise that Dunn would remain employed by one of the FastMed Defendants following the closing, inducing him to

---

[84] *Fortis*, 2015 WL 401371, at *8.

[85] Compl. ¶ 75.

[86] *Id.* ¶ 24.

[87] *See Fortis*, 2015 WL 401371, at *8.

[88] *Id.* at *7.

[89] Compl. ¶¶ 22–26.

sign the Second Agreement," indicating his position that the assurances were made before or during the execution.[90] Dunn's claim for fraud under the Second Employment Agreement fails to apprise Defendants of when the alleged statements were made.

As to both the Letter of Transmittal and the Second Employment Agreement, "the [C]omplaint makes no mention of where or by what means any of the misrepresentations were made."[91] The Complaint does not describe where (*e.g.*, at Urgent Cares' offices, FastMed's offices, a mutual meeting place) or how (*e.g.*, in person, by phone, by email) any of these representations occurred. As the Court pointed out in *Fortis Advisors LLC v. Dialog Semiconductor PLC*,

> [t]he lack of these details, in isolation, may not warrant dismissal under Rule 9(b). But when the lack of any such details is considered together with the failure of the [C]omplaint to identify when any of the alleged misrepresentations were made and who made any of them, the complaint fails in my view to apprise [the Defendants] of sufficient information concerning the circumstances of the alleged fraud and thus does not satisfy the particularity requirement of Rule 9(b).[92]

Dunn has failed to state a claim for fraud in the execution of the Letter of Transmittal and Second Employment Agreement under Rule 9(b).

---

[90] D.I. 16 at 16.

[91] *Fortis*, 2015 WL 401371, at *8.

[92] *Id.*

### 3. Dunn Has Failed To State A Claim For Negligent Misrepresentation.

Dunn has also failed to adequately plead the required elements of negligent misrepresentation. To state a negligent misrepresentation claim, Dunn must allege "(1) the defendant had a pecuniary duty to provide accurate information, (2) the defendant supplied false information, (3) the defendant failed to exercise reasonable care in obtaining or communicating the information, and (4) the plaintiff suffered a pecuniary loss caused by justifiable reliance upon the false information."[93] As a matter of law, promissory statements are insufficient to support a negligent misrepresentation claim.[94]

> Negligent misrepresentation, however, "cannot lie where the underlying representations take the form of promises" because promissory fraud requires an intentional or knowing act. That is because the promise to honor an agreement is only a misrepresentation if the promisor knows at the time of the promise that he will ultimately breach; such a misrepresentation cannot occur unknowingly or negligently.[95]

Dunn's claim for negligent misrepresentation is based on Defendants' promise to redraft the Restrictive Covenant at a later time.[96] These promissory statements cannot sustain Dunn's negligent misrepresentation claim.

---

[93] *CHR Hldg. Corp.*, 2008 WL 963048, at *8 (citing *Steinman*, 2002 WL 31761252, at *15).

[94] *Grunstein*, 2009 WL 4698541, at *14.

[95] *Id.* (footnote omitted).

[96] Compl. ¶¶ 18, 67.

In addition, Dunn's negligent misrepresentation claim fails under Rule 9(b). Although a separate and distinct claim, negligent misrepresentation is closely related to fraud. "A claim of negligent misrepresentation, or equitable fraud, requires proof of all of the elements of common law fraud except that plaintiff need not demonstrate that the misstatement or omission was made knowingly or recklessly."[97] Both fraud and negligent misrepresentation require pleading with particularity under Rule 9(b).[98] If a plaintiff brings both fraud and negligent misrepresentation claims and fails to plead his common law fraud claim with the requisite particularity, his negligent misrepresentation claim must fail for the same reason.[99] As discussed above, Dunn has failed to adequately plead fraud premised on the Letter of Transmittal under Rule 9(b). For those same reasons, Dunn's negligent misrepresentation claim is dismissed.

---

[97] *Fortis*, 2015 WL 401371, at *9 (internal quotation marks omitted); *see also CHR Hldg. Corp.*, 2008 WL 963048, at *8 (noting negligent misrepresentation "is in essence a fraud claim with a reduced state of mind requirement").

[98] *See Zebroski v. Progressive Direct Ins. Co.*, 2014 WL 2156984, at *7 (Del. Ch. Apr. 30, 2014) (applying Rule 9(b) pleading standard to equitable fraud claim); *Those Certain Underwriters at Lloyd's London v. Nat'l Installment Ins. Servs.*, 2007 WL 1207106, at *5 (Del. Ch. Feb. 8, 2007, revised Apr. 16, 2007) ("Court of Chancery Rule 9(b) requires that fraud be pled with particularity. This rule almost certainly extends to negligent misrepresentation (equitable fraud) as well[.]").

[99] *See Fortis*, 2015 WL 401371, at *9 ("Because [plaintiff] failed to plead its common law fraud claim with the requisite particularity, its negligent misrepresentation claim fails for the same reason.").

**C. The Restrictive Covenant Does Not Violate Delaware's Statute Encouraging The Unrestricted Practice Of Medicine.**

Dunn seeks relief in the form of a declaratory judgment and injunction preventing Defendants from attempting to enforce the Restrictive Covenant. He argues the Restrictive Covenant violates 6 *Del. C.* § 2707, which provides:

> Any covenant not to compete provision of an employment, partnership or corporate agreement between and/or among physicians which restricts the right of a physician to practice medicine in a particular locale and/or for a defined period of time, upon the termination of the principal agreement of which the said provision is a part, shall be void; except that all other provisions of such an agreement shall be enforceable at law, including provisions which require the payment of damages in an amount that is reasonably related to the injury suffered by reason of termination of the principal agreement. Provisions which require the payment of damages upon termination of the principal agreement may include, but not be limited to, damages related to competition.[100]

I conclude that because the term "practice medicine" in Section 2707 refers to a physician's provision of medical services to patients in Delaware, the Letter of Transmittal does not restrict Dunn's employment in a manner that violates Section 2707. Counts One and Seven are dismissed.

"The goal of statutory construction is to determine and give effect to legislative intent."[101] I "begin [my] analysis with the language of the statute

---

[100] 6 *Del. C.* § 2707.

[101] *Eliason v. Englehart*, 733 A.2d 944, 946 (Del. 1999).

itself."[102]   The key wording describes an "agreement between and/or among physicians which restricts the right of a physician *to practice medicine*."[103]   The statute does not define the phrase "to practice medicine," and no party has provided any authority construing it.  Few states have adopted similar legislation, and those states do not appear to have construed the phrase.[104]

Other Delaware laws provide guidance.  In a separate statute, the Medical Practice Act, the General Assembly defined "practice of medicine" or "practice medicine" as follows:[105]

> a. Advertising, holding out to the public, or representing in any manner that one is authorized to practice medicine in this State;
>
> b. Offering or undertaking to prescribe, order, give, or administer any drug or medicine for the use of another person;
>
> c. Offering or undertaking to prevent or to diagnose, correct, and/or treat in any manner or by any means, methods, or devices a disease, illness, pain, wound, fracture, infirmity, defect, or abnormal physical or

---

[102] *LeVan v. Indep. Mall, Inc.*, 940 A.2d 929, 933 (Del. 2007).

[103] 6 *Del. C.* § 2707 (emphasis added).

[104] *See* Colo. Rev. Stat. § 8–2–113(3), *amended by* Professions and Occupations Act, ch. 136 (H.B. 19-1172) (amended 2019); Mass. Gen. Laws ch. 112, § 12X (2019); R.I. Gen. Laws § 5–37–33; *see also Cent. Ind. Podiatry, P.C. v. Krueger*, 882 N.E.2d 723, 728 (Ind. 2008) (identifying Colorado, Delaware, and Massachusetts as states having adopted "statutes prohibiting physician noncompetition agreements").

[105] Section 2707 appears in general provisions relating to commerce and trade; it is not part of the Medical Practice Act.  *See Franklin Fibre-Lamitex Corp. v. Dir. of Revenue*, 505 A.2d 1296, 1298 (Del. Super. Ct. 1985) (stating that where term was not defined in statute it is "permissible to look to related statutes and principles of statutory construction to determine its meaning" (footnote omitted)), *aff'd*, 511 A.2d 385 (Del. 1986).

mental condition of another person, including the management of pregnancy and parturition;

d. Offering or undertaking to perform a surgical operation upon another person;

e. Rendering a written or otherwise documented medical opinion concerning the diagnosis or treatment of a person or the actual rendering of treatment to a person within the State by a physician located outside the State as a result of transmission of the person's medical data by electronic or other means from within the State to the physician or to the physician's agent;

f. Rendering a determination of medical necessity or a decision affecting or modifying the diagnosis and/or treatment of a person;

g. Using the designation Doctor, Doctor of Medicine, Doctor of Osteopathy, physician, surgeon, physician and surgeon, Dr., M.D., or D.O., or a similar designation, or any combination thereof, in the conduct of an occupation or profession pertaining to the prevention, diagnosis, or treatment of human disease or condition, unless the designation additionally contains the description of another branch of the healing arts for which one holds a valid license in the State.[106]

The definition concludes, "[f]or the purposes of this chapter, in order that the full resources of the State are available for the protection of persons using the services of physicians, *the act of the practice of medicine occurs where a person is located at the time a physician practices medicine upon the person*."[107] Thus, the enumerated acts pertain to the provision of medical services or treatment within Delaware.

---

[106] 24 *Del. C.* § 1702(12).

[107] *Id.* (emphasis added).

33

Title 24, Section 1720 relatedly sets out Delaware's "certification requirements to practice medicine."[108] Without meeting those requirements, the "person may not practice medicine in" Delaware.[109] There is no indication that the General Assembly intended to regulate the practice of medicine in other states.[110]

The dictionary complements these statutory definitions. Merriam-Webster defines "practice" as "to be professionally engaged in;"[111] lists "practice medicine" as the relevant example;[112] and defines "medicine" as "the science and art dealing with the maintenance of health and the prevention, alleviation, or cure of disease."[113]

In view of these sources, I conclude that the term "practice medicine" in Section 2707 refers to a physician's provision of medical services or treatment to patients in Delaware. "Although the plain language of [Section 2707] is dispositive, the legislative history helpfully confirms the narrow construction."[114] The synopsis

---

[108] 24 *Del. C.* § 1720.

[109] *Id.* § 1720(a).

[110] *Id.* § 1702(2) ("'Certificate to practice medicine' means the authorization awarded by the Board to a person who has been qualified to practice medicine in this State by meeting the requirements of this chapter.").

[111] *Practice*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/practice (last visited August 29, 2019).

[112] *Id.*

[113] *Medicine*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/medicine (last visited August 29, 2019).

[114] *Agar v. Judy*, 151 A.3d 456, 475 (Del. Ch. 2017); *see also Bd. of Adjustment of Sussex Cty. v. Verleysen*, 36 A.3d 326, 332 (Del. 2012) ("The most prevalent source of legislative

for the bill that became Section 2707 explains: "Because patients establish relationships with their physicians and/or enter into courses of treatment with particular physicians, the patients should not be deprived of the services of the physician of their choice because of an economic contract entered into between two physicians."[115] Section 2707 does not contemplate injunctive enforcement of its restriction, but allows damages because damages do not "[a]ffect[] the doctor/patient relationship already established prior to the termination" of the agreement between the physicians.[116] When sitting on the Superior Court, Vice Chancellor Slights stated that the General Assembly adopted Section 2707 in furtherance of "the importance of maintaining the continuity of care by protecting the physician-patient relationship."[117]

Dunn does not plead that the Restrictive Covenant prevents him from providing medical services as a physician in any way that would provoke Section 2707's protections of the physician-patient relationship. Nor does he plead that his job with Banner Health would involve patient care, generally or in Delaware. Rather, Dunn only states, "Banner Health's employment offer was a highly valuable

---

history for a Delaware statute is the synopsis, which the Delaware Supreme Court has held is 'a proper source for ascertaining legislative intent.'").

[115] Del. S.B. 294 syn., 132nd Gen. Assem. (Del. 1983).

[116] *Id.*

[117] *Total Care Physicians, P.A. v. O'Hara*, 2002 WL 31667901, at *6 (Del. Super. Ct. Oct. 29, 2002).

and unique opportunity through which Dunn could *utilize his expertise as Physician and Executive* in operating urgent care services … ."[118]  Thus, he only complains that the Restrictive Covenant prevented him from taking an *executive* position with Banner Health—a role that is in express contravention of the Letter of Transmittal, but not Section 2707.

Further, Dunn can practice medicine without violating the terms of the Restrictive Covenant.  The Letter of Transmittal expressly allows Dunn to be "employed as (and providing customary services of) a physician."[119]  This carveout preserves Dunn's ability to practice medicine.  This exemption is consistent with the purpose of the Restrictive Covenant, which was part of a merger whereby FastMed paid $200 million for Urgent Care.  The Restrictive Covenant protects FastMed and its investment in Urgent Care from Dunn (and others) competing with it in that business, not from Dunn seeing patients or providing medical treatment.  Further, Dunn resides in Arizona, and is "licensed to conduct all medical services relevant to his issued license in the state of Arizona."[120]  He does not plead that he ever offered, performed, or was licensed to provide any medical services in Delaware or that his job offer from Banner Health involved him doing so.

---

[118] Compl. ¶ 52 (emphasis added).

[119] *Id.* ¶ 21.

[120] *Id.* ¶ 10.

36

Thus, even giving Dunn the benefit of every reasonable inference, it is not reasonably conceivable that Section 2707 invalidates the Restrictive Covenant.[121] Section 2707 is meant to protect physician–patient relationships within Delaware by prohibiting restrictions on the practice of medicine in Delaware. Dunn is not a Delaware physician and is not precluded from practicing medicine under the Restrictive Covenant. Dunn's Restrictive Covenant does not violate Section

---

[121] Dunn argues the Court should not decide this issue now because "whether or not [the Banner Health] job constituted such practice is admittedly a factual question." D.I. 16 at 20. He relies on *Bakotic v. Bako Pathology LP*, 2018 WL 6601172 (Del. Super. Ct. Dec. 10, 2018). But that case does not involve any clear carveout to allow the physicians to provide physician services.

2707.[122]  Dunn asserts no other grounds for concluding the Restrictive Covenant is unenforceable.[123]  Counts One and Seven are dismissed.[124]

---

[122] The parties sparred over whether Section 2707 would violate the Commerce Clause of the United States Constitution if it were applied to physicians in other states.  *See* D.I. 20 at 16–19; D.I. 23 at 21–24; *see also Healy v. Beer Inst., Inc.*, 491 U.S. 324, 336–37 (1989) (stating courts must analyze "how the challenged statute may interact with the legitimate regulatory regimes of other States and what effect would arise if not one, but many or every, State adopted similar legislation" and that "[g]enerally speaking, the Commerce Clause protects against inconsistent legislation arising from the projection of one state regulatory regime into the jurisdiction of another State"); *Klig v. Deloitte LLP*, 36 A.3d 785, 797–98 (Del. Ch. 2011) ("Nor is there any basis to think that Delaware could enforce its vision of appropriate employment law regulation within New York's territory . . . . Under our federal system of co-equal state sovereigns, Delaware can readily regulate within its borders, but cannot regulate the wages of an individual working in another state, outside of Delaware's jurisdiction.").  I do not reach the Constitutional question.  The Court is to avoid constitutional issues if feasible.  *See Downs v. Jacobs*, 272 A.2d 706, 708 (Del. 1970) ("It is the settled policy of this Court that a constitutional question will not be decided unless its determination is essential to the disposition of the case."); *accord Snell v. Engineered Sys. & Designs, Inc.*, 1994 WL 672680, at *1 (Del. Ch. Nov. 18, 1994) ("[T]his Court should avoid deciding Constitutional questions if other means of disposing of a case are available."), *aff'd in part, rev'd in part*, 669 A.2d 13 (Del. 1995); *Crisco v. Bd. of Educ. of Indian River Sch. Dist.*, 1988 WL 90821, at *7 n.1 (Del. Ch. Aug. 29, 1988) ("I decline to reach the constitutional claim because it is not essential to the disposition of this case.").  Dunn's Restrictive Covenant does not fall within the ambit of Section 2707 because it does not prohibit his practice of medicine.  Those grounds alone are sufficient to resolve the issue before the Court.

[123] My analysis of Dunn's invocation of Section 2707 does not reach the issue of whether the Restrictive Covenant is enforceable in view of broader Delaware law or Arizona public policy.  *See generally NuVasive, Inc. v. Miles*, 2019 WL 4010814 (Del. Ch. Aug. 26, 2019).

[124] Count One seeks injunctive relief, asking the Court to enjoin the enforcement of the Restrictive Covenant.  Compl. ¶ 53–56, b.  Count One must be dismissed on two grounds.  First, because the Court concludes that the Restrictive Covenant is enforceable over Dunn's sole argument, based on Section 2707, Dunn's request for injunctive relief cannot be granted.  Second, "[i]njunctions are a form of relief, not a cause of action." *Quadrant Structured Prods. Co., Ltd. v. Vertin*, 102 A.3d 155, 203 (Del. Ch. 2014).  Therefore, "[a]s a technical matter," Count One is dismissed because it seeks a "remed[y] rather than assert[s] claims." *Id.*

38

### D. Dunn Fails To Adequately Allege Intentional Interference With A Contractual Relationship.

Dunn argues Defendants intentionally interfered with his prospective contractual relationship with Banner Health by threatening to enforce the Restrictive Covenant.[125] He claims that the "Defendants knew or should have known that [the] statements [to Banner Health] were false, given the unenforceability of the non-compete clause."[126] "A claim for tortious interference with contract requires a showing that: '(1) there was a contract, (2) about which the particular defendant knew, (3) an intentional act that was a significant factor in causing the breach of contract, (4) the act was without justification, and (5) it caused injury.'"[127] Defendants attack the fourth element on the ground that their interference was proper and justified.[128] A plaintiff does not state a claim for improper interference where the alleged improper action is "within [the defendant's] contractual rights."[129]

---

[125] Compl. ¶¶ 82–87.

[126] D.I. 16 at 21.

[127] *Himawan v. Cephalon, Inc.*, 2018 WL 6822708, at *9 (Del. Ch. Dec. 28, 2018) (quoting *WaveDivision Hldgs., LLC v. Highland Capital Mgmt., L.P.*, 49 A.3d 1168, 1174 (Del. 2012)). Dunn does not frame this claim as relating to prospective relations. The Court adopts his framing.

[128] D.I. 12 at 23 ("Here, FastMed Defendants had the legitimate and justifiable motive of enforcing the benefit of their bargain with regard to the five-year covenant not to compete. Under such circumstances, Dunn cannot show an improper motive, nor does he allege any.").

[129] *Chapter 7 Tr. Constantino Flores v. Strauss Water Ltd.*, 2016 WL 5243950, at *12 (Del. Ch. Sept. 22, 2016) (concluding claim was not well-pled where defendant acted within its contractual rights); *see also Darius Int'l, Inc. v. Young*, 2008 WL 1820945, at *48 (E.D.

Dunn argues Defendants' assertion of the Restrictive Covenant was improper because Defendants knew, or should have known, that it was unenforceable under Section 2707.[130] According to Dunn, Defendants improperly threatened Banner Health with an agreement Defendants knew was not enforceable. As described above, Section 2707 does not render the Restrictive Covenant unenforceable. Dunn asserts no other basis for unenforceability, and therefore, no other basis for concluding Defendants wielded the Restrictive Covenant improperly. Because asserting the Restrictive Covenant was "within [the Defendants'] contractual rights," Dunn's claim for intentional interference is dismissed.[131]

### E.     Dunn's Defamation Per Se Claim Must Be Dismissed For Lack Of Subject Matter Jurisdiction.

Dunn's defamation per se claim asserts that Defendants falsely stated to Banner Health that employing Dunn would violate the Restrictive Covenant.[132]

---

Pa. Apr. 23, 2008) (ruling party's actions were justified where it "merely enforced a non-competition agreement that it believed in good faith was valid").

[130] Compl. ¶ 86 ("Defendants acted improperly by attempting to apply a restrictive covenant that Dunn was not subject to, and notifying Banner Health to the effect of interfering with his future employment with Banner Health."); D.I. 16 at 16 ("Defendants knew, or should have known, that the five-year non-compete clause in the [Letter of Transmittal] was unenforceable under the circumstances.").

[131] *See Strauss Water Ltd.*, 2016 WL 5243950, at *12 ("[Plaintiff] [i]s required to plead that [the] alleged interference was somehow improper.").

[132] Compl. ¶¶ 101–02.

40

Even assuming Dunn had stated a claim for defamation,[133] the claim must be dismissed because this Court lacks jurisdiction to hear the claim. "Equitable jurisdiction is a predicate issue for every matter in this court of limited jurisdiction."[134] The Court has a duty to determine whether it has the jurisdiction to hear Dunn's claim and can raise the jurisdictional issue *sua sponte*.[135] An independent claim for defamation does not fall within the purview of Chancery's equitable jurisdiction because "*equity will not enjoin a libel*."[136]

In view of this Court's limited ability to redress common-law torts, as well as this Court's inability to sanction a party solely for speech, defamation—and specifically its subcategories of libel and slander—"are seen as denizens of the Superior Court, and are subject to the findings made there by juries regarding the

---

[133] The Court need not and cannot determine whether Dunn has stated a claim for defamation per se because it lacks subject matter jurisdiction over the claim. Such a determination must be made in the appropriate court of law.

[134] *Preston Hollow Capital, LLC v. Nuveen, LLC*, 2019 WL 3801471, at *4 (Del. Ch. Aug. 13, 2019) (citing *Athene Life & Annuity Co. v. Am. Gen. Life Ins. Co.*, 2019 WL 3451376 (Del. Ch. July 31, 2019)).

[135] *See*, *e.g.*, Ct. Ch. R. 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the Court lacks jurisdiction of the subject matter, the Court shall dismiss the action."); *Envo, Inc. v. Walters*, 2009 WL 5173807, at *4 n.10 (Del. Ch. Dec. 30, 2009) ("The issue of subject matter jurisdiction is so crucial that it may be raised at any time before final judgment and by the court *sua sponte*."), *aff'd*, No. 460, 2012, 2013 WL 1283533 (Del. Mar. 28, 2013) (TABLE).

[136] *Preston Hollow*, 2019 WL 3801471, at *9 (interpreting *J.C. Pitman & Sons, Inc. v. Pitman*, 7 A.2d 721 (Del. Ch. 1946)); *Organovo Hldgs., Inc. v. Dimitrov*, 162 A.3d 102, 115 (Del. Ch. 2017).

speech of their peers."[137] The boundaries of Chancery's jurisdiction in this area have been carefully drawn, with only one narrow exception surviving the maxim that equity will not enjoin a libel.[138]

The "trade libel" exception was first established in *J.C. Pitman & Sons, Inc. v. Pitman*.[139] *Pitman* recognized that, while courts will not enjoin "mere trade libels," when "a court of equity has jurisdiction on some other ground, the American courts will also usually enjoin the continued publication of a trade libel *incident thereto*."[140] If the claim falls within *Pitman*'s ambit, this Court may exercise its jurisdiction to enjoin "trade libel," "a libelous statement to consumers that falsely disparages a plaintiff's goods or services."[141] But if the *Pitman* trade libel exception does not apply, then the claim for defamation must be dismissed or transferred to a court of law.

In *Organovo Holdings, Inc. v. Dimitrov*, Vice Chancellor Laster determined that *Pitman*'s trade libel exception did not apply where a plaintiff failed to state a claim that would otherwise invoke this Court's jurisdiction, in that case tortious

---

[137] *Preston Hollow*, 2019 WL 3801471, at *1.

[138] *See Pitman*, 47 A.2d at 726.

[139] *Id.* at 725–26.

[140] *Id.* at 725 (emphasis added)

[141] *Preston Hollow*, 2019 WL 3801471, at *2.

42

interference with prospective economic advantage.[142] Assuming for purposes of the analysis that the complaint pled trade libel, the Court "recognized that a request for equitable remedies for tortious interference with prospective economic advantage can provide the requisite basis for equitable jurisdiction that can justify a related injunction against future speech."[143] But because the plaintiff's complaint failed to state a claim for tortious interference, the Court found that the complaint "cannot provide a route to an injunction against defamatory statements that are part of a larger trade libel. It consequently cannot provide a basis for subject matter jurisdiction."[144] If the plaintiff fails to plead an independent tort claim warranting an anti-speech injunction, and if that claim is consequently dismissed, then *Organovo* governs and the trade libel exception cannot confer subject matter jurisdiction over the defamation claim.

Assuming for purposes of this analysis that Dunn has pled trade libel, Dunn's claim for defamation per se falls beyond *Pitman's* narrow scope. Although Dunn brought independent claims for fraud, negligent misrepresentation, and international interference with contractual relationship, these claims have been dismissed, and all that remains is a defamation claim. Thus, nothing remains to "invoke[e] the

---

[142] *Organovo Hldgs.*, 162 A.3d at 123.

[143] *Id.* at 122.

[144] *Id.* at 123.

application of equity to a wrong other than 'mere' defamation."[145]  Without an independently and adequately pled tort claim, there is no basis for an equitable remedy that would only "incidentally" enjoin Defendants' speech.  Because the remainder of Dunn's claims have been dismissed, Dunn can only ask this Court to do two things:  (1) simply enjoin a libel, which it cannot do, and (2) award damages for the claim, a legal remedy that, without additional grist for the mill of equity, cannot be fashioned by this Court.  Dunn's claim falls squarely within *Organovo*, and must be dismissed.

"As discussed at length above, this Court is without jurisdiction to determine whether slander has occurred here.  In such a case, a plaintiff may generally transfer the matter to a court of law."[146]  Dunn seeks both an injunction and damages for his defamation claim.[147]  As exemplified by Vice Chancellor Slights in *Perlman v. Vox Media, Inc.*, where a plaintiff seeks both damages and injunctive relief for a

---

[145] *Preston Hollow*, 2019 WL 3801471, at *9 (citing *Organovo*, 162 A.3d at 123).

[146] *Id*. at *10.

[147] Dunn asserts that Defendants' alleged defamatory statements "caused Dunn to be damaged in an amount to be determined at trial," Compl. ¶ 105, and further seeks "compensatory damages against Defendants in an amount to be proven at trial," *id.* ¶ c.  In addition, Dunn seeks "an injunction precluding Defendants from contacting Dunn, Banner Health, and any future employers of Dunn in regard to the improper application of the alleged restrictive covenant." *Id.* ¶ b.

defamation claim, the matter should be transferred to Superior Court.[148]  If Dunn wishes to pursue his claim for damages from defamation per se, he may elect to transfer the claim to the Superior Court by filing an election of transfer within sixty days under Section 1902.[149]

### F.    Dunn Has Not Adequately Pled Civil Conspiracy.

Finally, Dunn alleges that the "Defendants had an agreement to … fraudulently induce Dunn to surrender his Profits Interest Units and confine Dunn's future employability in his chosen field."[150]  Dunn must plead three elements to state a claim for civil conspiracy:  "(1) a confederation or combination of two or more persons; (2) an unlawful act done in furtherance of the conspiracy; and (3) actual damage."[151]  The second element makes clear that "[c]ivil conspiracy "is not an

---

[148] 2019 WL 2647520, at *4, *7 (Del. Ch. June 27, 2019) (determining that defamation claim for which plaintiff sought both an injunction and damages should be transferred to Superior Court).

[149] *See* 10 *Del. C.* § 1902 ("No civil action, suit or other proceeding brought in any court of this State shall be dismissed solely on the ground that such court is without jurisdiction of the subject matter, either in the original proceeding or on appeal.  Such proceeding may be transferred to an appropriate court for hearing and determination, provided that the party otherwise adversely affected, within 60 days after the order denying the jurisdiction of the first court has become final, files in that court a written election of transfer … .").

[150] Compl. ¶ 89.

[151] *AeroGlobal Capital Mgmt., LLC v. Cirrus Indus., Inc.*, 871 A.2d 428, 437 n.8 (Del. 2005).

independent cause of action; it must be predicated on an underlying wrong."[152]

Because Dunn's other claims fail, his civil conspiracy claim also fails.

## III.   CONCLUSION[153]

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED, with Count Eight subject to transfer to Superior Court.   Once Dunn makes his election on Count Eight, the parties shall submit a conforming order.

---

[152] *Kuroda v. SPJS Hldgs., L.L.C.*, 971 A.2d 872, 892 (Del. Ch. 2009) (citation omitted).

[153] Bohannon requested that if the complaint is "not dismissed in its entirety" that the Court analyze whether it should be dismissed as to him for separate reasons.  D.I. 12 at 26–27. Because of the above analysis, I need not consider those reasons.